**LOCAL 900, UNITED PAPERWORKERS INTERNATIONAL UNION and United Paperworkers International Union, Plaintiffs,**

v.

**BOISE CASCADE CORPORATION, Defendant.**

**Civ. No. 87–0067 P.**

United States District Court, D. Maine.

July 22, 1987.

Patrick N. McTeague, McTeague, Higbee, Libner, Brunswick, Me., for plaintiffs.

Stephen M. Kite-Powell, John T. Sahlberg, Boise Cascade Corp., Boise, Idaho, Andrew M. Horton, Verrill & Dana, Portland, Me., for defendant.

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GENE CARTER, District Judge.

This case is before the Court on Defendant's motion for summary judgment. For the reasons stated herein, the motion will be granted in part and denied in part, and a stay of discovery previously imposed pending a ruling on the motion will be lifted.

### I. BACKGROUND

The undisputed facts are as follows. Plaintiffs are the United Paperworkers International Union and its affiliated Local 900 (hereinafter collectively "the Union"). Defendant is the Boise Cascade Corporation (hereinafter "Boise"). The Union is the exclusive bargaining representative for most of the production and maintenance employees at Boise's paper mill in Rumford, Maine. On June 30, 1986 the collective bargaining agreement between the Union and Boise expired, and a strike ensued. In July, Boise unilaterally implemented new terms and conditions of employment, apparently not including a grievance arbitration procedure. In September of 1986, in settlement of the strike, the parties executed a new collective bargaining agreement, a "return-to-work" agreement governing the transition, an oral agreement for a hiring freeze, and, the Union alleges, an oral agreement to exercise good faith in the performance of the other three agreements. The collective bargaining agreement contained an arbitration clause, and both the Union and Boise characterize the return-to-work agreement as "ancillary to the collective bargaining agreement."

Subsequently, the Union filed numerous grievances, each of which alleges a violation of one or more of the above-mentioned four agreements. Little specific information about any individual grievance is before the Court. It thus may be that one or more of the grievances alleges a violation only of the hiring freeze and/or the alleged good faith agreements, which are not themselves asserted to contain arbitration clauses. Or it may be that every grievance alleges a violation of the collective bargaining agreement, which does contain an arbitration clause, and/or the return-to-work agreement, which is "ancillary to the collective bargaining agreement" and itself contains a clause at least discussing arbitration.

Each of the grievances alleging a violation of the collective bargaining agreement and/or the return-to-work agreement is being processed through the grievance resolution procedures established by the collective bargaining agreement. Although, under these procedures, grievances not resolved at earlier stages may proceed to arbitration, as of June 8, 1987, no grievance had reached arbitration. Boise has indicated to the Union that in the event any grievance does reach arbitration, Boise may assert the defense that the grievance is nonarbitrable.

In response, the Union filed this action, basing jurisdiction on section 301(a) of the Labor Management Relations Act, as amended, 29 U.S.C. § 185(a) (1982), and 9 U.S.C. § 4. In Count I, the Union alleges that "in accordance with the collective bargaining agreement," it has filed grievances alleging violations of the four above-mentioned agreements, that Boise "has refused to admit to its obligation to arbitrate these grievances or to proceed to arbitration on the grievances," and that Boise "has failed, neglected, and refused to arbitrate under a written agreement for arbitration." The Union seeks an order directing that arbitration proceed in the manner provided for in the collective bargaining agreement. In Count II, the Union alleges that Boise has violated the four agreements as well as the terms and conditions of employment that Boise unilaterally implemented during the strike in July of 1986. The Union seeks damages and injunctive relief. Boise has moved for summary judgment on both counts, and discovery has been stayed pending a ruling on the motion.

## II. COUNT I

The operative allegations of Count I are that Boise has refused to admit to its obligation to arbitrate the grievances, has refused to admit to its obligation to proceed to arbitration on the grievances, and has refused to arbitrate the grievances. As discussed more fully below, the Court concludes that as a matter of law, Boise has no duty to admit its obligation to arbitrate or its obligation to proceed to arbitration. Moreover, there is no genuine issue of fact as to Boise's refusal to arbitrate the grievances; Boise has not so refused. Summary judgment for Boise on Count I is therefore appropriate.

The Union cites no authority establishing that a party to an arbitration agreement has a duty to admit, in advance of arbitration, that it has an obligation to arbitrate or to proceed to arbitration on a given grievance. Even assuming for the purposes of this motion that Boise currently believes a given grievance to be nonarbitrable, Boise has at least four options, based on the interaction of two variables: whether the defense is asserted on procedural or substantive grounds, and whether the defense is asserted in the first instance to the arbitrator or to the Court.

Boise's view may be that the grievance is procedurally non-arbitrable, *i.e.*, that the contractual procedures for taking a grievance to arbitration have not been followed. Boise could, first, raise this defense to the arbitrator, who would rule upon it, *John Wiley & Sons v. Livingston,* 376 U.S. 543, 555–59, 84 S.Ct. 909, 917–19, 11 L.Ed.2d 898 (1964), with the very limited judicial review announced in *United Steelworkers v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 596–97, 80 S.Ct. 1358, 1360–61, 4 L.Ed.2d 1424 (1960). Or, second, Boise could refuse to proceed to arbitration, in which case the Union, on the authority of *John Wiley & Sons,* could obtain from this Court an order that the parties submit the issue to the arbitrator.

Alternatively, Boise's view might be that the grievance is substantively nonarbitrable, *i.e.*, that the grievance is not the type of dispute that the contract creates a duty to arbitrate. In this case, Boise could, third, raise the defense to the arbitrator, who could rule upon it if the parties clearly intend that he or she do so, *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 583 n. 7, 80 S.Ct. 1347, 1353 n. 7, 4 L.Ed.2d 1409 (1960); *Local 369, Utility Workers Union v. Boston Edison Co.,* 752 F.2d 1, 3 (1st Cir.1984), with limited judicial review under the *Enterprise Wheel & Car* standard, *id.* at 3. If the parties do not clearly so intend, and particularly if Boise expressly reserved the substantive arbitrability question, this Court would make a *de novo* determination of the question in the event it was raised in an action to vacate or enforce the arbitrator's award. *Mobil Oil Corp. v. Local 8–766, Oil, Chemical & Atomic Workers Intern. Union,* 600 F.2d 322, 324 (1st Cir.1979). Or, fourth, Boise could refuse to proceed to arbitration, and in an action by Boise to stay arbitration or by the Union to compel arbitration, this Court would rule on the substantive arbitrability defense and would issue an appropriate order. *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *Bechtel Const., Inc. v. Laborers Intern. Union,* 812 F.2d 750 (1st Cir.1987).

■ Boise could raise its nonarbitrability defense in any of the above four ways. But Boise has no duty, contractual or otherwise, to *admit* arbitrability. Nor does Boise have a duty to proceed to arbitration and raise its defense there; Boise may, instead, resist arbitration and raise the defense to this Court. *A fortiori,* Boise has no duty to *admit* to any duty to proceed to arbitration.[1] And there is nothing in the

---

1. Boise may, of course, have a duty to exercise good faith in raising its defenses. This duty could encompass at least a duty not to refuse to proceed to arbitration on grounds that are clearly procedural and thus must be ruled upon by the arbitrator rather than the Court. The duty could also encompass a duty not to refuse to proceed to arbitration on grounds of substantive nonarbitrability that are clearly frivolous. The net effect of a breach of either duty would be to waste the time and resources of the Union, as well as of the Court, and to delay the resolution

record suggesting that Boise has refused to arbitrate any grievance; there is no genuine issue of fact on this question. Therefore, Boise is entitled to summary judgment in its favor on Count I.

### III. COUNT II

In Count II, the Union alleges the Boise has violated the collective bargaining agreement, the return-to-work agreement, the hiring freeze agreement, and the alleged good faith agreement; the Union seeks damages and injunctive relief. Boise moves for summary judgment on the ground that the Union has not yet exhausted its contractual remedies, including grievance arbitration.

 Boise has been scrupulously careful to avoid admitting that any one of the pending grievances is in fact arbitrable. Boise's position, as stated in its reply memorandum, "is that its agreements with the Union are 'ancillary' to the collective bargaining agreement in the sense of being subject to the same general duty to arbitrate." But Boise, upon whom the burden rests as the moving party, has not provided sufficient evidence for the Court to conclude, nor has it argued, that any particular grievance is substantively arbitrable. Summary judgment is therefore inappropriate, and the stay of discovery pending a ruling on the summary judgment motion will be lifted.

It appears to the Court that the Union, by filing Count II, has forced Boise to reveal its position on the substantive arbitrability of each grievance. The Court discussed above the various ways in which Boise itself could bring the substantive arbitrability question before the Court; as noted, Boise has no duty to do so, but neither can Boise avoid taking a position once the Union has properly brought the question before the Court. If on a future motion Boise establishes, or the parties stipulate, that any particular grievance is substantively arbitrable, the Court will is-

of the underlying dispute, thus threatening industrial peace. But in the instant case, the Court does not understand the Union to argue that Boise has breached either duty; even if the

sue the appropriate order and, if appropriate, will stay discovery with respect to that grievance. Until that time, however, the Union must be allowed to proceed on Count II.

### IV. ORDER

It is therefore *ORDERED* that Boise's Motion for Summary Judgment in its favor is *GRANTED* as to Count I and *DENIED* as to Count II, without prejudice to its later reassertion, and that the Magistrate's May 12, 1987 order staying discovery is *VACATED*.

Union had alleged such a violation, the question would arise whether the alleged violation itself would be arbitrable.