**LOCAL 900, UNITED PAPERWORKERS INTERNATIONAL UNION and United Paperworkers International Union, Plaintiffs,**

v.

**BOISE CASCADE CORPORATION, Defendant.**

**Civ. No. 87–0067–P.**

United States District Court, D. Maine.

March 30, 1988.

---

Patrick N. McTeague, McTeague, Higbee, Libner, Topsham, Me., for plaintiffs.

Stephen M. Kite–Powell, John T. Sahlberg, Boise, Idaho, Andrew M. Horton, Verrill & Dana, Portland, Me., for defendant.

## MEMORANDUM OF DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT AND/OR MOTION TO STAY

GENE CARTER, District Judge.

This matter comes before the Court on Defendant Boise Cascade Corporation's renewed motion for summary judgment and/or stay of the proceedings on Count II. For the reasons stated herein, the motion for summary judgment will be granted in part and denied in part.

### I. *Background*

The undisputed facts are as follows. Plaintiffs are the United Paperworkers International Union and its affiliated Local 900 (hereinafter collectively "the Union"). Defendant is the Boise Cascade Corporation (hereinafter "Boise"). The Union is the exclusive bargaining representative for most of the production and maintenance employees at Boise's paper mill in Rumford, Maine. On June 30, 1986, the collective bargaining agreement between the Union and Boise expired, and a strike ensued. In July, Boise unilaterally implemented new terms and conditions of employment, which apparently did not include a grievance arbitration procedure. The Union asserts that the parties executed a number of agreements in negotiating an end to the strike. Those agreements included: (1) a written collective bargaining agreement; (2) a written return-to-work agreement; (3) an oral agreement to exercise good faith; and, most important to the issue at bar, (4) an oral agreement to freeze all hiring of replacement personnel between 5:00 p.m., Friday, September 12 and 5:00 p.m., Sunday, September 14, while the Union membership voted on the proposed collective bargaining agreement. In its Answer, Boise admits that the parties made the collective bargaining, return-to-work, and hiring freeze agreements, but denies that there was an oral agreement to exercise good faith.

Between September and December 1986, the Union filed numerous grievances alleging violations of one or more of the above-mentioned agreements. Boise indicated to the Union that in the event any grievance reached arbitration, Boise might assert that the grievance was nonarbitrable. In response, the Union filed this action, basing jurisdiction on section 301(a) of the Labor Management Relations Act, as amended, 29 U.S.C. § 185(a), and 9 U.S.C. § 4. In Count I, the Union complained that Boise had "refused to admit to its obligation to arbitrate these grievances or to proceed to arbitration" on the grievances, and had "failed, neglected, and refused to arbitrate under a written agreement for arbitration." The Court granted Boise's motion for summary judgment on Count I, holding that Boise had no duty, contractual or otherwise, to admit to any duty to proceed to arbitration. *Local 900, United Paperworkers v. Boise Cascade*, 664 F.Supp. 34,

36 (D.Me.1987). Further, since there was nothing in the record suggesting that Boise had actually refused to arbitrate any grievance, there was no genuine issue of fact on the question. *Id.* at 36–37.

With respect to Count II, the Union alleges that Boise "willfully and intentionally violated the collective bargaining agreement, the return-to-work agreement, the hiring freeze agreement, and its agreement to exercise good faith, as well as the terms and conditions of employment" that Boise unilaterally implemented during the strike in July of 1986. The Union seeks damages and injunctive relief. Boise based its original motion for summary judgment on Count II on the ground that the Union had not yet exhausted its contractual remedies, including grievance arbitration. However, Boise had been scrupulously careful to avoid admitting that any one of the pending grievances was in fact arbitrable. Boise's position, as stated in its reply memorandum, was "that its agreements with the Union are 'ancillary' to this collective bargaining agreement in the sense of being subject to the same general duty to arbitrate." But Boise, upon whom the burden rested as the moving party, had not provided sufficient evidence for the Court to conclude that any particular grievance was substantively arbitrable. Summary judgment was therefore inappropriate, and the stay of discovery pending a ruling on the summary judgment was lifted. *Id.* at 37. While Boise had no duty to bring the substantive arbitrability question before the Court, the Court stated that Boise could not avoid taking a position once the Union had properly brought the question before the Court. *Id.* "If on a future motion Boise establishes, or the parties stipulate, that any particular grievance is substantively arbitrable, the Court will issue the appropriate order and, if appropriate, will stay discovery with respect to the grievance." *Id.* Until that time, however, the Court held that the Union must be allowed to proceed on Count II. *Id.*

## II. *Boise's Renewed Motion on Count II*

Since the time that the Court denied Boise's motion for summary judgment on Count II, Boise has agreed to stipulate to the substantive arbitrability of all of the grievances upon which the Union has requested such a stipulation. Boise now argues that the Union is obligated to exhaust the grievance procedure included within the collective bargaining agreement before it can bring suit in federal court. Thus, both parties now agree that the grievances are arbitrable and the Court should therefore dismiss the action, with one exception: the Union insists that while Grievance No. 3187 [1] is "arbitrable to the extent it alleges a breach of the collective bargaining agreement or a breach of the return to work agreement, the contract dispute over the Company's breach of the hiring freeze agreement is *not* arbitrable but must be litigated before the Court under § 301." Supplemental Memorandum of Plaintiff Unions in Opposition to Defendant's Second Motion for Summary Judgment at 3 (footnotes omitted) (emphasis in original). Thus, the only issue remaining for the Court's determination is whether the parties must submit the dispute over the hiring freeze agreement to arbitration, thus requiring the Court to dismiss this case. *AT & T Technologies, Inc. v. Communication Workers,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) ("the question of arbitrability—whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination.")

### A.

It has long been held that "arbitration is a matter of contract and a party cannot be

---

**1.** Grievance No. 3187 provides:

The Company is in violation of our Contract and our Back to Work Agreement by hiring replacements after we had signed the Contract and Back to Work Agreement, namely job, department and mill seniority. The Company and Union agreed on hiring freeze from 5 P.M., Friday, September 12 to 5 P.M. Sunday. Records show that this is not the case.

The grievance seeks the removal of all employees hired during the freeze and the rehiring of all employees who were replaced during the period, with back pay.

required to submit to arbitration any dispute which he has not agreed so to submit." *Steelworkers v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). The Union asserts that the parties have not agreed to arbitrate the hiring freeze dispute—the oral agreement did not require arbitration, and the Union has not stipulated to its arbitrability. According to the Union, "the hiring freeze is an independent contract which contains no arbitration agreement." Supplemental Memorandum of Plaintiffs at 4. Unlike the collective bargaining and the return-to-work agreements, the terms of the hiring freeze agreement do not bind the parties to arbitrate the dispute. Boise does not dispute this contention of the Union, but instead argues that the parties have stipulated to the dispute's arbitrability.

■ Boise's argument fails, however, since the parties never stipulated to the arbitrability of the dispute. The Union offered to stipulate to the arbitrability of Grievance No. 3187, which complained of the alleged breach of the hiring freeze, prior to the Court's grant of summary judgment on Count I.[2] However, Boise rejected the stipulation as offered, and asserted that the grievances were not arbitrable. After the Court granted Boise's motion for summary judgment on Count I, Boise changed direction and offered to stipulate to the arbitrability of all ten grievances, including Grievance No. 3187.[3] The Union accepted Boise's offer as to all grievances except Grievance No. 3187. Thus, there was never any stipulation concerning

Grievance No. 3187. There was never any mutual assent as to a stipulation.

■ Although the parties never effectively stipulated to the arbitrability of the grievance, the Union nevertheless admitted in its own pleadings that the dispute is arbitrable. In its Complaint, the Union stated:

6. In accordance with the collective bargaining agreement, Plaintiffs have filed grievances alleging that Defendant violated the collective bargaining agreement, the return to work agreement, the hiring freeze agreement, and the agreement to exercise good faith.

7. Defendant has refused to admit to its obligation to arbitrate these grievances or to proceed to arbitration on the grievances.

The only possible conclusion which can be reached from the Union's Complaint is that the Union admits to the arbitrability of the grievance, since Boise could not be obligated to arbitrate unless the Union was similarly obligated. For the purpose of this action, the Union is bound by its assertion of fact. *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding."). *See also White v. Arco/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir.1983).

The fact that the Union now submits affidavits contradicting the assertions set forth in its Complaint cannot change the result. *Bellefonte*, 757 F.2d at 528–29. Nor can the Court rightfully find that the

---

**2.** In a letter dated April 22, 1987, the Union's counsel wrote to Boise's Associate General Counsel: "I am now enclosing for your consideration 10 grievances (Grievance Nos. 3183, 3185, 3187, 3188, 3189, 3208, 3211, 3212, 3216, and 3218). The Union requests that the Company stipulate to procedural and substantive arbitrability for each of these grievances.... If the Company will stipulate that all of these grievances are substantively and procedurally arbitrable, then I see no reason why the Union's complaint in federal court could not be dismissed."

**3.** Boise's offer to stipulate differed from the Union's previous offer in one important man-

ner: Boise proposed that the grievance be arbitrated "in accordance with the collective bargaining agreement," which provides that the "arbitrator cannot order pay for time not worked except in cases of unwarranted suspensions or discharges." The Union's proposed stipulation stated that the grievance "is substantively arbitrable, and that the arbitrator may render a final and binding decision upon the grievance under the terms of the Agreements." Thus, the Union's proposed stipulation would not restrict the arbitrator's potential award to the same extent as Boise's proposal. Supplemental Memo at 5–7.

Union pleaded Counts I and II in the alternative, as the Union expressly incorporated paragraphs 6 and 7 in Count II.[4] *Cf. MacFarlane v. Grasso*, 696 F.2d 217, 224–25 (2d Cir.1982). Thus, the Union is bound to the admission in its Complaint that the grievance concerning the hiring freeze dispute is arbitrable.

### III. *Exhaustion*

 The Union's admission that the dispute may be arbitrated does not dispose of the issue, however, since the fact that a dispute is arbitrable does not necessarily require the parties to exhaust the arbitration process. If the parties did not intend arbitration to be their exclusive remedy, then a court will normally hear a suit for breach of contract even though the arbitration procedures have not been exhausted. *Vaca v. Sipes*, 386 U.S. 171, 184 n. 9, 87 S.Ct. 903, 913 n. 9, 17 L.Ed.2d 842 (1967). "No obligation to arbitrate a labor dispute arises solely by operation of law. The law compels a party to submit his grievance to arbitration only if he has contracted to do so." *Gateway Coal Co. v. United Mine Workers*, 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974). The hiring freeze agreement was made orally, and is distinct from the other agreements.[5] Unlike the collective bargaining agreement or return-to-work agreement, the hiring freeze agreement did not contain any provision which compelled the arbitration of disputes arising out of the agreement. Thus, the Court cannot order the parties to arbitration. *Triple A Maintenance Corp. v. Bevona*, 657 F.Supp. 1171, 1173 (S.D.N.Y. 1987) ("As a matter of federal policy, a Court will not require parties in a labor dispute to arbitration unless they are bound to do so by a collective bargaining agreement.") (citing *Nolde Bros., Inc. v. Local 358*, 430 U.S. 243, 250–51, 97 S.Ct. 1067, 1071, 51 L.Ed.2d 300 (1977)). Since there is absolutely no evidence that the parties agreed upon arbitration as their exclusive remedy for breach of the hiring freeze agreement, the Court will not dismiss the Union's claim under section 301 that Boise breached the hiring freeze agreement. *Vaca v. Sipes*, 386 U.S. at 184 n. 9, 87 S.Ct. at 913 n. 9.

### IV. *Discovery*

The Court will not permit discovery to continue on any issue except the hiring freeze agreement. "The great weight of authority is clearly to the effect that discovery on the subject matter of a dispute to be arbitrated will be denied." *Mississippi Power Co. v. Peabody Coal Co.*, 69 F.R.D. 558, 565 (S.D.Miss.1976). *See also Lummus Co. v. Commonwealth Oil Refining Co.*, 273 F.2d 613, 613 (1st Cir.1959) (court granted motion to delay discovery until after a decision on a party's pending appeal from the order staying arbitration). *See also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 n. 18, 98 S.Ct. 2380, 2390 n. 18, 57 L.Ed.2d 253 (1978) ("When the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied."). *But see International Ass'n of Heat and Frost Insulators and Asbestos Workers, Local 66 v. Leona Lee Corp.*, 434 F.2d 192, 194 (5th Cir.1970) (court approved discovery on the underlying issue prior to arbitration). Although a showing of "ex-

---

4. The first paragraph of Count II states: "Plaintiffs restate Paragraphs 1–8 set forth in COUNT I."

5. Boise points out that the Union's Complaint states: "Ancillary to [the collective bargaining agreement and the return-to-work agreement], the parties agreed to a hiring freeze...." Boise argues that the hiring freeze agreement should be dismissed because it is "'ancillary' in the sense of being subject to the same general duty to arbitrate." Such a broad definition of "ancillary" is not appropriate here. The Court must apply that definition which does substantial justice, and reasonable inferences may be drawn to aid the pleader. *Quinones v. United States*, 492 F.2d 1269, 1273 (3d Cir.1974). "Ancillary" means "subordinate or auxiliary to a primary or principal legal document." Webster's Third New International Dictionary (1981). In this context, "auxiliary" should be taken to mean "offering or providing help, assistance, or support especially by interaction." Thus, the hiring freeze was ancillary in the sense that it supported the two written agreements by assuring that the *status quo* would be maintained while the Union members voted to accept them. It was not ancillary in the sense that it was subject to the same arbitration obligation.

ceptional circumstances" may justify simultaneous discovery in federal court and in arbitration, *see Levin v. Ripple Twist Mills, Inc.*, 416 F.Supp. 876, 880 (E.D.Pa.1976), *appeal dismissed*, 549 F.2d 795 (3d Cir.1977), here the Union makes neither a claim nor a showing of exceptional circumstances. Therefore, discovery with regard to all issues except the hiring freeze agreement will be denied.

## V. *Conclusion*

With respect to the disputes arising from the new collective bargaining agreement or the return-to-work agreement, the parties have agreed to arbitrate and the claims will be dismissed. Grievance No. 3187 is arbitrable to the extent it is based upon the collective bargaining agreement or the return-to-work agreement, since both of those agreements contain exclusive arbitration remedies. It is for the arbitrator, and not this Court, to dispose of those issues. Grievance No. 3187 is also arbitrable with respect to the hiring freeze agreement because the Union so admitted in its Complaint. However, the Union's breach of contract claim in Count II cannot be dismissed with respect to the hiring freeze agreement, since there is no evidence that the parties had agreed to make arbitration their exclusive remedy for breaches of that agreement. Boise has not proved that the Union was required by the terms of the agreement to exhaust the arbitration process before it could proceed with its suit. Thus, Count II will not be dismissed with respect to the hiring freeze agreement.

Accordingly, Boise's motion to dismiss the proceedings on Count II is hereby DENIED with respect to the alleged breach of the hiring freeze agreement. The motion is GRANTED with respect to all other aspects of Count II.

So ORDERED.