**NATIONAL WESTERN LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Merrill LYNCH, Pierce, Fenner & Smith, Inc. Defendant.**

**No. 93 CIV. 7244(VM).**

United States District Court, S.D. New York.

Oct. 25, 2000.

### ORDER

MARRERO, District Judge.

On August 15, 2000 this Court entered an Opinion and Order granting in part and denying in part a motion by defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") to dismiss plaintiff National Western Life Insurance Company's ("National Western") complaint for failure to state a cause of action. The Court also granted Merrill Lynch's motion

for summary judgment on one of National Western's claims. National Western now moves under Local Civil Rule 6.3 for reconsideration or reargument.

National Western bases its petition on three specific matters counsel asserts the Court overlooked. First, National Western contends that the Court overlooked Rule 8(e)(2) of the Federal Rules of Civil Procedure, which expressly authorizes alternative, hypothetical or inconsistent pleading. Second, National Western claims that the Court misapprehended allegations in the Complaint concerning the "Future Sellout Value" determined by the appraiser. Third, the motion argues that the Court's analysis of National Western's allegation concerning the omission of condominium common charges from the Appraisal's determination of Rental Value rested on a misunderstanding of the nature and operation of the property in question. For the reasons set forth below, National Western's motion to reargue is denied.

A. *Rule (8)(e)(2)*

National Western argues that the Court, in characterizing several allegations of National Western's Complaint as internally at odds, conflicting or inconsistent, did not take into account the provisions of Fed. R.Civ.P. 8(e)(2). That Rule states that:

A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and wheth-

er based on legal, equitable, or maritime grounds.

Merrill Lynch, in opposing National Western's instant motion, contends that the Court should reject the petition because during the entire history of this litigation, National Western has never raised a Rule 8 argument that its Complaint stated its fraud claims in the alternative, and that legal arguments may not be raised for the first time on a motion to reargue. The Court does not address this argument because, as discussed below, in fact the Court did treat National Western's Complaint as pleading conceptually distinct, alternative claims. The Court also fully considered the alternative allegations that National Western had received "all or portions" of the Appraisal.

National Western is incorrect in asserting that the Court overlooked Rule 8(e)(2). In fact, the Court specifically acknowledged that National Western's Complaint pleads separate, alternative claims alleging statutory and common law fraud, negligent misrepresentation and breach of fiduciary duty (Opinion at 8). The essential elements of these causes of action overlap, and to some extent may conflict insofar as a prerequisite that may bar recovery as to one claim may not be necessary for another. Nothing in the Opinion suggests that the Court treated any inconsistencies arising from National Western's statements of these alternative claims or discrete theories of liability as grounds to sustain dismissal of the Complaint.

Moreover, the Court also acknowledged that National Western's principal claims contain separate parts that state alternate sub-claims. On page 14 of the Opinion, the Court indicated that, with respect to the fraud claims, drawing reasonable doubts and inferences in National Western's favor, the Court divided its analysis of the issue concerning what portions of

the Appraisal were deemed before the Court for the purposes of the motion into two components, "corresponding to the *two distinct theories* and particular instances of actionable conduct alleged in the Complaint" (Opinion at 14) (emphasis added).

The Court also went to great lengths, despite the complex "conceptual difficulties and dilemmas" the pleadings present, expressly to accept National Western's alternative allegation that it had received "all or portions" of the Appraisal (Opinion at 28–29; 31–33). In fact, contrary to National Western's assertion that the Court drew inferences against it, the Court made clear that it concluded quite the opposite, drawing reasonable inferences *in favor* of National Western "*despite* the seeming ambiguity" of National Western's inconsistent pleadings (Opinion, at 33–34) (emphasis added). The Court then, accepting the statement of two conceptually distinct charges of fraud, proceeded to uphold the sufficiency of the pleadings relating to the Sponsor's financials but to deny it as to the allegations concerning the claimed misrepresentations with regard to the valuations of the Property. In this respect, the Court read National Western's theory as stating a primary fraud claim containing separate, interrelated ways in which, by means of certain specific alleged misrepresentations and omissions, the Appraisal's calculation of the Property's market value was allegedly false or misleading. In drawing this distinction between National Western's different charges of fraud, the Court effectively allowed National Western to set forth alternately or hypothetically, as permissible under Rule 8(e)(2), two or more statements of its fraud *claim,* regardless of potential inconsistency.

■■■ But the Court believes there is a difference between inconsistent alternative statements of a particular claim and conflicting assertions of specific facts internal-ly alleged in support of that same claim. *See Schott Motorcycle Supply v. American Honda Motor Co.,* 976 F.2d 58, 61 (1st Cir.1992). In the instant case, what the Court found contradictory in National Western's Complaint was not its separate claims or theories of recovery, but specific conflicting *facts* alleged to sustain the particular statement of the claim the Court found deficient. It is for this reason that the Court characterized these allegations as "internally" at odds. *See* Opinion, at 31, 35, 43. In this Court's reading, while the Rule 8(e)(2) clearly allows pleading of inconsistent theories or statements of a claim, there is no authority for the proposition that within a statement of a given claim a party may assert as fact two assertions that directly contradict each other. Such clashing factual assertions, stated in the context of the same claim rather than as conceptually distinct alternative theories of liability, may be deemed judicial admissions. *See Schott,* 976 F.2d at 61–62; *Local 900, United Paperworkers Int'l Union v. Boise Cascade Corp.,* 683 F.Supp. 280, 283–84 (D.Me.1988); *see also Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,* 757 F.2d 523, 528 (2d Cir.1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding").

This construction of the Rule is supported by its very language, as expressed in the provision that: "[w]hen two or more statements [of a claim or defense] are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements." The reference in this text to a "statement" that would be independently "sufficient" or "insufficient" makes clear that the Rule contemplates alternative statements of a claim that as a whole is capable of being assessed for legal

sufficiency or insufficiency. In this context, an application of Rule 8(e)(2) that would permit conflicting assertions of facts within a statement of a given claim would render the Rule incoherent.

The difficulties that National Western's application of Rule 8(e)(2) would pose are highlighted by the circumstances presented by this case, which must be gauged in the context of an action claiming misrepresentation and fraud and a Rule 12(b)(6) motion to dismiss the complaint for failure to state a sufficient claim. By its very nature, an allegation of fraud is grounded fundamentally on the claimant's state of mind, on what the given plaintiff actually knew at a stated time and how material that information was to him. On a motion to dismiss, the Court must accept plaintiff's factual pleadings as true. But, as the Court stressed in its Opinion, how is a court, within a statement of the same claim, to adopt as true a given fact that is either clearly at odds with another fact set forth in the Complaint as part of the statement of that claim, or otherwise refuted beyond doubt by matters on the record before the Court? *See* Opinion, at 27. Which of the two contrary factual assertions does the Court accept as true for the purposes of assessing the sufficiency of the statement of the claim? *See Bellefonte,* 757 F.2d at 528.

■ Thus, for example, National Western asserts that it was misled and defrauded because the Offering Summary provided the $41.1 Million Future Sellout Value but not the $20 Million Rental Value. The Complaint, however, expressly asserts that the Van Ancken appraisal stated that the fair market value of the residential condominium unit as a rental, rather than as a cooperative, was $20,000,000 (the "Rental Value") (Compl.¶ 62). It also alleges that in deciding to make its investment in the CorEast loan, National Western "reason-

ably relied on the representation in the Van Ancken appraisal as to the fair market value of the residential condominium unit as a rental" (Comp.¶ 68). To the extent that National Western's Property Valuation fraud theory rests on the allegations that Merrill Lynch withheld material information from the Offering Summary regarding the $20 million rental valuation, that National Western consequently lacked knowledge of that essential information, and that National Western was not provided the Appraisal or the pertinent portion of it disclosing the Rental Value, how can the Court square these factual assertions with the factual statement in the same claim of the Complaint that, in deciding to invest, National Western relied on the representation in the Appraisal as to the fair market Rental Value?

Moreover, as the Court's analysis demonstrates, taking the Complaint at face value and drawing all reasonable inferences in favor of National Western, the Rental Value figure is set forth in the portions of the Appraisal that National Western, in order to assert in the Complaint that it relied on the Appraisal's representation of Rental Value, must have possessed at the time it made its investment decision. Expressing this factual conflict within the statement of National Western's Property valuation claim, the Court noted: "In other words, it is difficult to see how National Western can contend that it was defrauded both because it acted to its detriment upon information it was provided, and at the same time because it was deprived of that same information" (Opinion at 32). The Court does not read into Rule 8(e)(2) a purpose to permit such discrepant factual assertions within a the same statement of a claim or theory of liability, especially in the context of an action for fraud or misrepresentation, where the claimant's actual knowledge at a

given moment is a critical element of a prima facie case.

■ In this regard, the issue of whether National Western was defrauded because one document it was provided may have omitted a material fact cannot be determined in a vacuum or in the abstract. The real question is whether, even if one document did not mention a given fact, National Western could have been misled if that same fact, according to National Western's own pleadings and matters on the record, was actually contemporaneously supplied to it in another document. The elements of actual knowledge and materiality of the representation at issue do not rest on the content of a single document or statement, but on what the party claiming fraud actually knew from the representations "taken together and in context". *See I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.,* 936 F.2d 759, 761 (2d Cir.1991). *See also Haralson v. EF Hutton,* 919 F.2d 1014, 1032 (5th Cir.1990) ("The statutes preclude recovery whenever a plaintiff actually knows that a representation is false or knows that existing information has been withheld.").

Nonetheless, the Court's decision to grant the motion to dismiss did not rest solely on the internally contrary factual assertions the Court found in National Western's Complaint within the statement of its rental valuation claim. Rather, it was founded on other independently sufficient grounds. First, the Court cited a number of allegations stated either as conclusions of law or as unfounded or unwarranted deductions. *See* Opinion, at 37; 39; 40; 43; 45. Second, to the extent the pleadings are generally conclusory, speculative and not sufficiently grounded on supportable facts, they are deficient under the particularity required by Fed.R.Civ.P. 9(b) for claims of frauds (Opinion, at 39; 70–71). Third, the Court found that, even

accepting National Western's alternative theories and despite the inconsistencies they posed, as regards the Property valuation claim, the allegations in the Complaint failed to satisfy the elements of actual knowledge and/or materiality that are essential to make out a prima facie case under the Texas Securities Act or common law.

National Western also argues that the Court's analysis assumes that National Western understood the importance of the Rental Value appraisal at the time it made the investment, as opposed to years later when its counsel prepared the Complaint in this action, and that nothing in the Complaint suggests National Western understood this fact when it made the investment. First, the Complaint states explicitly that National Western relied on the Appraisal's representation as to Rental Value "[i]n deciding to purchase the sub-participation interest in the CorEast Loan" (Comp.¶ 68). Second, the Court fails to understand how a plaintiff's state of mind—with regard to a legal claim that requires, as essential elements, allegations of knowledge, materiality and reasonable reliance at the time of the transaction in question—could be judged as of any other point than the time when the claimant is about to make the particular investment, and not what counsel crafts as a complaint for litigation purposes years later.

### B. *The Future Sellout Value*

National Western asserts that the Court misapprehended the basis for National Western's assertion that the shares representing the 61 sold and 137 unsold units were not collateral or otherwise available to the Cooperative to repay the mortgage loan made to the Cooperative by the CorEast Bank. National Western explains that the $41 Million Future Sellout Value set forth in the Offering Summary was

calculated on the basis of the appraiser's estimate of what the 198 units that comprised the Cooperative would sell for over the assumed period of time. Accordingly, the appraiser's analysis included the 61 apartments that the Sponsor, not the borrower Cooperative, had already sold and the 137 whose shares it still owned. *See* Memorandum of Law in Support of Plaintiff's Motion to Reargue ("Memorandum"), at 10. National Western then concludes that:

> The proceeds from the sold units had already been realized by the seller; the proceeds from the sale of the unsold units would not be deposited to the treasury of the cooperative corporation, where they might be available to repay the loan in case of default, but would be distributed to the Sponsor or to the lender to which those shares were pledged. None of the proceeds—the premise underlying the Future Sellout Value—would find their way into the borrower's pockets.

*Id.* at 10–11.

The Court found National Western's allegation insufficient not because it misapprehended the Complaint's theory in this respect as National Western contends, but because the Court regarded this contention as a particular instance of allegations asserted as unwarranted legal conclusions and unsupported speculation. *See* Opinion, at 37; 39. As National Western's Memorandum herein acknowledges, the 198–unit residential portion of the condominium building was owned by the Cooperative Corporation, which was the borrower on the CorEast loan of which National Western purchased a subparticipation interest. *See* Memorandum at 10. The shares of the Cooperative's stock corresponding to the individual apartments, however, were owned not by the Cooperative, but by the purchasers with respect to units sold, or by the Sponsor as to those unsold. As the Sponsor sold the apartments, in regards to which it initially owned all of the shares, it naturally retained the proceeds of sale. As owner of the shares it was entitled to do so, and to apply such proceeds to any purpose consistent with its rights of ownership.

What National Western's allegation amounts to is a bare legal conclusion that somehow, as "the premise underlying it", the appraiser's estimate of Future Sellout Value also conveyed with it a representation of the existence of a legal obligation on the part of the Sponsor to turn over to the Cooperative the proceeds the Sponsor collected from the sale of any shares of units the Sponsor sold. The allegation also presupposes that such proceeds in turn must be available to the Cooperative in order to pay debt service in the event of a default related to an obligation, not of the Sponsor, but of the actual borrower on the CorEast loans—the Cooperative.

■ National Western fails to cite any controlling authority, whether in law or in the underlying contractual obligations among the parties here involved, to support its premise that the borrower Cooperative, and by extension the lenders, possessed such a security interest in the proceeds the Sponsor obtained by the sale of the units it owned. Nor does the Court find a legally sufficient basis for the related proposition that the Appraisal's representation of Future Sellout Value set forth in the Offering Summary, which is projected as a statement that the estimated fair market value the Property at the given time was $41 Million, must be construed to translate, directly or indirectly, into an expression of a legal commitment on the part of the Sponsor, and of a corresponding legal entitlement on the part of the Cooperative and its lend-

ers, to have the Sponsor's proceeds of apartment sales "find their way into the borrower's pockets". To this extent, the Court found that this pleading does not rest on a cognizable legal theory but on unfounded conclusory assertions and legal opinion. Accordingly, the Court endeavored to set forth what it construed as a sustainable legal basis under which a lender, upon a default by the Cooperative on the underlying loan, would be entitled properly to claim entitlement to the proceeds of the resale of all the units constituting the Property in question (Opinion, 37–39).

### C. Condominium Charges

National Western's third argument in support of its motion to reargue claims that the Court, in concluding that the Appraisal disclosed the omission of condominium common charges from its Rental Valuation, overlooked the structure of the relevant building as a "condop". Memo, at 12. National Western asserts that the Court erroneously conflated the concepts of a property operating in two parts: one portion as a condominium and another, upon a foreclosure sale of the former cooperative unit, as a rental.

██ In fact, the Opinion made clear that there was no such confusion. The Court expressly acknowledged the status of the Property as a two-unit condominium, one consisting of the ground floor commercial space and garage, and the other comprising the 198 units in the residential Property (Opinion, at 3). In employing the term "building" in the section of the Opinion relating to the Condominium Charges, the Court was mindful of this distinction, and applied the term as it is used in the Appraisal, which interchangeably describes the "property" and the "building" to which the Appraisal's computation of Rental Value relates as consisting of the 198 residen-

tial apartments only (Opinion, at 47–48). The Court recognized that under the assumptions of Rental Value set forth in the Appraisal, upon a foreclosure on the Cooperative, that portion of the structure would revert to operation as a rental unit.

Nonetheless, the residential part would still constitute but one component of an entire structure whose other portion remained a commercial condominium. The difference would consist of a conversion of use of the two units from commercial condominium/residential cooperative to commercial condominium/residential rental. To this extent, the residential portion would still remain obligated to pay its proportionate share of common maintenance costs associated with operating as one segment of a divided property. This recognition is reflected in the Opinion's statement that: "Instead, maintenance costs attributable to the parts of common spaces located within the rental property would be subsumed in the total expenses projected for operation of the entire rental property" (Opinion, at 48).

The point the Court sought to establish was that, in the Court's reading, the Appraisal discloses the assumption that, when the residential portion of the structure would cease to exist as a cooperative and resume functioning as rental property, the itemization of the categories of expenses that had been assumed in the Appraisal's computation of cooperative operations, and perhaps even the corresponding amounts, may change. Thus, for cost accounting purposes, the "Condominium Charges" item that was listed as a lump sum obligation of the Cooperative unit in the enumeration of expenses associated with the structure's condominium/cooperative operation, would no longer be appropriate in reflecting the categories of expenses that would pertain to a computation of such expenses when the residential portion

would transform into rental property in a commercial condominium/residential rental form of ownership.

That is not to say, however, that some if not all of the same common cost items would not be reflected in some other manner or methodology in the calculation of expenses assumed with regard to operation of the residential component of the structure as a rental unit that would remain operationally related to the commercial condominium. On this methodology, the Appraisal, instead of separately listing the condominium charges as a consolidated item, disaggregated and distributed the amount of the expenses among a number of other categories of expenses for the purposes of the rental operation analysis. In fact, as Merrill Lynch argues, both that assumption, and the related changes in projected operating expenses, are facts established in other portions of the Appraisal and in the Offering Plan that the Appraisal's Rent Value analysis reviewed and points to as the sources where the assumed revised expenses calculations are set forth. The Court, however, chose not to extend its analysis into those documents because it ruled them as not on the record for the purposes of the Rule 12(b)(6) motion (Opinion, pp. 49–50).

To the extent National Western's claim rests technically upon the fact that the Appraisal's Rental Value computation omitted the Condominium Charges as a category of expense in the rental operation assumption, the analysis shows that National Western had actual knowledge "of" the technical omission by which it alleges it was defrauded. On the other hand, to the extent National Western alleges that the Rental Value analysis does not reflect any common expenses at all associated with the residential unit operating as part of a condominium/rental structure, the Appraisal's Rental Value calculation also dis-

closes the figures upon which the representation is based, as well as the sources for the numbers it employed to arrive at the different assumption.

On these various grounds the Court concluded that in connection with the Rental Valuation fraud charge, the pleadings did not establish the necessary element of the prima facie case requiring knowledge of the alleged falsity of the misrepresentation or omission, nor, as regards the common law claim, the standard of scienter.

### *ORDER*

For the foregoing reasons, it is hereby

ORDERED, that National Western's motion to reargue is denied.

SO ORDERED.