500 A.2d 1155

**LOOS & DILWORTH**

v.

**QUAKER STATE OIL REFINING
CORPORATION, Appellant.**

Superior Court of Pennsylvania.

Argued April 3, 1985.

Filed Nov. 15, 1985.

478

John J. Hart, Doylestown, for appellant.

James D. Coleman, Philadelphia, for appellee.

Before CAVANAUGH, OLSZEWSKI and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from the lower court's order granting appellee a new trial. While we agree that a new trial is warranted because of an erroneous jury charge and, accordingly, affirm the court's order, upon retrial the jury should be charged in accordance with this opinion.

In October, 1980, appellee, Loos & Dilworth, Inc., brought this action in assumpsit against appellant, Quaker State Oil Refining Corporation, seeking damages for appellant's alleged wrongful termination of a written distributor agreement between them. Appellee alleged that appellant failed to "act in good faith and in a commercially reasonable manner as required by law...." (Appellee's Complaint

¶ 14 at 4).[1] A jury trial was held in the Court of Common Pleas of Bucks County on December 12–19, 1983. Prior to its deliberations, the presiding judge submitted to the jury the following special interrogatories:

1. Do you find that the relationship between [appellee] and [appellant] was one of franchisee-franchisor?

YES___ NO___

(If the answer to Question No. 1 is "NO", then you should find for [appellant], and you need not proceed to Questions No. 2 and No. 3.)

2. (Answer this question only if the answer to Question No. 1 is "YES".)

Do you find that [appellant's] termination of its relationship with [appellee] was arbitrary, in bad faith, and not commercially reasonable?

YES___ NO___

(If the answer to Question No. 2 is "NO", then you should find for [appellant] and you need not proceed to Question No. 3.)

3. (Answer this question only if the answers to Questions No. 1 and 2 are "YES".)

What is the total amount of damages suffered by [appellee] as a result of the termination of its relationship with [appellant]?

$ _____

The jury answered "yes" to question one and "no" to question two, thus finding for appellant. *See* N.T., Verdict, December 19, 1983 at 2. Appellee thereupon moved for a new trial, arguing that the court's charge to the jury, *i.e.*, that it must find that appellant's termination was "arbitrary, in bad faith, *and* not commercially reasonable" (em-

---

1. The parties' relationship was governed by a series of one-year contracts or renewal agreements beginning in 1926. The latest agreement was dated January 17, 1974; it was last renewed, pursuant to a written renewal agreement, on January 17, 1978. By letter dated December 13, 1978, appellant notified appellee that the 1974 distributor agreement would "not be renewed at the expiration date of January 17, 1979." *See* Exhibit C to Appellee's Complaint.

phasis added), was incorrect. Appellee contended that the word "or" should have been used instead of the word "and" in the charge. By order and opinion dated May 8, 1984, the court agreed and granted appellee a new trial, basing its action on our Supreme Court's decision in *Atlantic Richfield Co. v. Razumic*, 480 Pa. 366, 390 A.2d 736 (1978). *See Loos and Dilworth, Inc. v. Quaker State Oil Refining Corp.*, 44 Bucks County L.Rep. 7, 9 (Ct.C.P.1984). This appeal followed.

It is well-established that the decision to either grant or deny a motion for a new trial is within the sound discretion of the trial court, and its decision will not be reversed on appeal absent a palpable abuse of discretion or clear error of law. *Tyus v. Resta*, 328 Pa.Superior Ct. 11, 16, 476 A.2d 427, 430 (1984). Pennsylvania appellate courts rarely reverse a trial court's decision on a motion for a new trial. 16 Standard Pa.Practice 2d § 91:87 at 522 (1983). With those principles in mind, we turn to appellant's contentions.

## I

■ Appellant first contends that appellee's objection to the lower court's instruction was waived because appellee failed to take a specific exception to the charge. The cases appellant cites, however, *see Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974); *Crosbie v. Westinghouse Elevator Co.*, 297 Pa.Superior Ct. 304, 443 A.2d 849 (1982); *Capan v. Divine Providence Hospital*, 270 Pa.Superior Ct. 127, 410 A.2d 1282 (1979), are inapposite; those cases concern preserving issues for *appeal*.[2] We believe appellant's assertion is that, because appellee failed to object specifically to the court's charge, the court could not thereupon grant appellee a new trial based on the alleged error. This contention is meritless.

**2.** The cases cited by both parties would be more applicable if, for example, *appellee* was arguing that appellant had failed to preserve an issue for appeal because appellant had failed to object specifically to the court's charge at trial.

Pennsylvania Rule of Civil Procedure 227.1 provides, in pertinent part, that

\* \* \* \* \* \*

(b) [p]ost-trial relief may not be granted unless the grounds therefor,

(1) if then available, were raised ... by ... point for charge, ...; and

(2) are specified in the [post-trial] motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.

Pa.R.Civ.P. 227.1(b). Rule 227.1(b) mandates two requirements, then, which must be met before post-trial relief can be granted. *See id.* comment. Here, while appellee took no specific objection, it did submit a point for charge requesting the court to charge the jury that it must find that appellant's decision not to renew the 1974 agreement was "arbitrary, in bad faith *or* not commercially reasonable." (Appellee's Requested Points for Charge No. 1.b at 1) (emphasis added). The court below refused the point, taking out the word "or" and replacing it with the word "and." (N.T., Points for Charge, December 19, 1983 at 2). Following the jury's verdict, appellee then moved for a new trial, arguing, *inter alia,* that the court's correction was incorrect and that its requested point was proper and should have been given. Thus, appellee satisfied both Pa.R.Civ.P. 227.1(b) requirements, and therefore the trial judge was properly able to grant appellee's requested relief.

## II

█ Appellant next contends that the court's instruction to the jury regarding appellee's "burden of proof" (*i.e.,* special interrogatory number two) was not erroneous or prejudicial to appellee. We disagree. In granting a new trial, the lower court correctly concluded that the charge was in error. We disagree, however, with the court's reading of *Atlantic Richfield Co. v. Razumic, supra.* In

*Razumic,* our Supreme Court held that, even though the franchise agreement in issue provided for a three-year term of occupancy, "[c]onsistent with [a franchisee's] reasonable expectations, principles of good faith and commercial reasonableness, [a franchisor] may not arbitrarily recover possession of [a] service station and thereby summarily terminate the franchise relationship." *Id.*, 480 Pa. at 381, 390 A.2d at 743. The lower court read *Razumic* to place three affirmative obligations on the franchisor: (1) to act in good faith, (2) to act in a commercially reasonable fashion, and (3) not to act arbitrarily when terminating a franchise. *Razumic's* progeny make clear, however, that *Razumic* placed only two obligations on the franchisor: to act (1) in good faith and (2) with commercial reasonableness. *See Amoco Oil Co. v. Burns,* 496 Pa. 336, 342, 437 A.2d 381, 383 (1981) ("principles of good faith and commercial reasonableness"); *Witmer v. Exxon Corp.,* 495 Pa. 540, 549–50, 434 A.2d 1222, 1227 (1981) ("*Razumic* standards of good faith and commercial reasonableness"). Thus, a franchisor acts arbitrarily *if* it acts in bad faith *or* in a commercially unreasonable fashion.

Appellant argues, however, that appellee was not prejudiced by the court's instruction because (1) appellee failed to request, in its points for charge, specific definitions of the terms "bad faith," "commercial unreasonableness," and "arbitrary;" (2) appellee alleged, in its complaint and closing argument, that appellant acted in bad faith; (3) the court equated bad faith with commercial unreasonableness in its charge; and (4) the terms "bad faith" and "commercial unreasonableness" are not really different and distinct from each other. We believe that these contentions are meritless and find, consequently, that the lower court did not abuse its discretion in granting appellee a new trial.[3]

**3.** The basis of appellant's argument appears to be that any error in the court's instructions was harmless, and, therefore, the lower court need not have granted appellee a new trial. The court below, however, found that "a prejudicial burden was placed on [appellee]." *Loos and Dilworth, Inc. v. Quaker State Oil Refining Corp., supra* at 9. Thus, to

We address appellant's specific arguments in turn. First, even if appellee had requested the court to define the above-mentioned terms, the jury would still have had to find that appellant violated all three obligations according to the court's charge. As we have stated, appellee need only prove that appellant breached *one* of its obligations, not all three (or two, as we have found that *Razumic* places two duties on a franchisor). Similar reasoning applies to appellant's second argument, that appellee cannot be heard to complain about the court's charge where appellee sought to prove only appellant's bad faith and now seeks to rely upon another "theory" at a new trial.

Nor do we agree with appellant that the lower court, by instructing the jury that it could compare evidence of appellant's treatment of other distributors with its treatment of appellee, equated "bad faith" with "commercial unreasonableness." Appellant relies upon the following portion of the court's charge:

In order to terminate such a relationship, though it must be done in good faith, or stated conversely, not in bad faith, it must not be done arbitrarily and it must be done in a commercially reasonable manner. If you find that [appellee] has proved by a preponderance of the evidence that it was a franchisee, you must, next, determine if [appellant's] decision not to renew its agreement with [appellee] was arbitrary, in bad faith, and not commercially reasonable.

In so determining, you may compare [appellant] and [appellee] with other franchisees that [appellant] had. Now, in that regard, I am not going to go over all the evidence that you have had because you have had a great deal of evidence about the relationship between [appellee] as it was working for [appellant] in comparison with other distributors, or franchisees, whichever you determine that were working in the division, in the territory, and even across the country.

reverse we would have to find that the lower court abused its discretion in finding prejudice to appellee.

And, it is for you to determine just what all those figures mean. You have heard arguments on both sides, and you have, also, received evidence as to other ways and other matters in which [appellant] terminated distributors.

(N.T., Jury Charge, December 19, 1983 at 9). Therefore, appellant argues that appellee "suffered no prejudice, because this instruction was exactly in accordance with its own legal theory contending [that appellant] treated [appellee] differently than other distributors thus constituting evidence of bad faith, arbitrariness and commercial unreasonableness." (Brief for Appellant at 22). The record belies appellant's contention. Immediately following the above-quoted portion of the charge, the court further instructed the jury that "all of that is presented to you on this question as to whether or not [appellant] acted in bad faith or arbitrarily [sic], bad faith *and* arbitrarily, *and* in a commercially unreasonable manner in their termination of [appellee]." (N.T., Jury Charge, December 19, 1983 at 10) (emphasis added). Thus, we do not believe that the lower court equated the above terms with each other. Again, the jury was told that it had to find that all three obligations were breached before appellee could recover. Appellant's fourth argument, that the terms "bad faith" and "commercial unreasonableness" are not different and distinct from each other and that, because appellee failed to produce any evidence of commercial standards of fair dealing in the trade, it could not recover, is flawed. Appellant defines "good faith" as follows: "In the case of a merchant, good faith means honesty in fact *and* the observance of reasonable commercial standards of fair dealing in the trade." (Brief for Appellant at 23, *citing* 13 Pa.C.S.A. § 2103(a)) (emphasis added).[4] We reject this definition of "good faith." In support of its proposition that a franchisor has an "obligation to deal with its franchisees in good faith and

---

4. This definition is found in "Division 2—Sales" of the Uniform Commercial Code (UCC) as adopted in this Commonwealth.

in a commercially reasonable manner," the *Razumic* Court cited the following:

> Restatement (Second) of Contracts, supra at § 231 [Tent. Draft No. 5, 1970] (imposing standard of good faith on contracting parties); Hewitt, "Termination of Dealer Franchises and the Code—Mixing Classified and Coordinated Uncertainty With Conflict," 22 Bus.Law. 1075, 1086 (1967); cf. Uniform Commercial Code, § 1–102(3) (imposing same standard in commercial transactions involving sale of goods).

*Atlantic Richfield Co. v. Razumic, supra,* 480 Pa. at 378, 378 n. 7a, 390 A.2d at 742, 742 n. 7a. Section 231, now § 205, reads: "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."[5] Restatement (Second) of Contracts § 205 (1981). Comment a to § 205, however, cites both Uniform Comercial Code (UCC) definitions of "good faith:" (1) the definition contained in § 2–103(1)(b) [13 Pa.C.S.A. § 2103(a), cited by appellant] and (2) the definition contained in § 1–201(19). The latter definition has been codified in this Commonwealth at 13 Pa.C.S.A. § 1201, which defines "good faith" as "[h]onesty in fact in the conduct or transaction concerned." Initially, we note that there is a question of whether the provisions of divisions one (general provisions) and two (sales) of the UCC, *see* 13 Pa.C.S.A. §§ 1101–2725, are even applicable here. While we are not strictly dealing with a sale of goods, but rather with a franchise agreement which includes the sale of goods,[6] we can "apply[] the stated principles by analogy." *Zapatha v. Dairy Mart, Inc.,* 381 Mass. 284, 408 N.E.2d 1370, 1375 (1980); *see also Stanley A. Klopp, Inc. v. John Deere Co.,* 510 F.Supp. 807, 809 (E.D.Pa.1981) (relies upon *Zapatha* to find that "[the UCC] represents a policy statement by the

---

**5.** Our Supreme Court's citation to § 1–102(3) of the UCC evidently refers to § 1–203, codified in this Commonwealth at 13 Pa.C.S.A. § 1203: "Every contract or duty within this title imposes an obligation of good faith in its performance or enforcement."

**6.** "[Appellee] purchased products from [appellant] for resale...." (Appellee's Complaint ¶ 4 at 2).

state legislature concerning good faith, as applicable to a franchise agreement as to a conventional article 2 contract for the sale of goods").

 We believe that our Supreme Court's holding was clear: a franchisor must act both in good faith *and* in a commercially reasonable manner when terminating a franchise. If the Court meant for these terms to be one and the same, it could have said so. As for the term "good faith," we hereby adopt that definition contained in 13 Pa.C.S.A. § 1201, namely, "honesty in fact in the conduct or transaction concerned." To adopt the § 2103(a) definition would lead to an absurdity; a franchisor would have to be honest in fact and observe reasonable commercial standards of fair dealing in the trade to act in good faith and then also act in a commercially reasonable manner. In any event, appellant's argument is logically flawed. Even if appellee produced no evidence of what was commercially reasonable, appellee could still recover if it proved that appellant did not act in good faith, *i.e.*, that it was dishonest in fact. Therefore, we reject appellant's four arguments and find that the court's instruction to the jury was both erroneous and prejudicial to appellee.

### III

Appellant finally contends that certain provisions of the written distributor agreement compel that a verdict be entered in its favor, arguing that paragraph three [7] renders the *Razumic* principles inapplicable to the instant case and that paragraph eight [8] precludes appellee's recovery regard-

7. "The term of this agreement shall be for one year from the date hereof, subject to the provisions for cancellation herein contained." (Exhibit A to Appellee's Complaint ¶ 3 at 1).

8. Unless it is otherwise specially agreed upon in writing by the parties hereto, it is now understood and agreed that upon the termination or cancellation of this agreement, the Buyer shall not make any claim for, or have any right to demand reimbursement or compensation in any amount from the Seller for any moneys expended or liabilities incurred by the Buyer in or for the Selling or sales of QUAKER STATE Oils and other products or the conducting or promoting of the business of the Buyer therein, or for any profits

less of whether *Razumic* applies or not. Appellant therefore requests that we reverse the order of the court below and reinstate the jury's verdict.

■ Before reaching the merits of those arguments, however, we must first determine whether appellant properly preserved those issues for review. If either of appellant's arguments is correct, we could not grant appellant's request that the jury verdict be reinstated as that verdict would be rendered unnecessary; we believe appellant is arguing that, for either or both of the above-cited reasons, the lower court should have *directed a verdict* in its favor. "While ordinarily an appellate court will not reverse the action of a lower court in granting a new trial, it will do so where binding instructions should have been given as a matter of law for the party in whose favor the verdict was rendered. . . ." *Owens v. Peters*, 126 Pa.Superior Ct. 501, 507–08, 191 A. 399, 401 (1937) (citations omitted); *see also Hill v. Gerheim*, 419 Pa. 349, 353, 214 A.2d 240, 243 (1965); *Fornelli v. Pennsylvania R.R. Co.*, 309 Pa. 365, 369, 164 A. 54, 55 (1932); *see generally* 16 Standard Pa. Practice 2d § 91:87 at 522–23 (1983). Thus, in order to have preserved its two arguments, appellant must have requested binding instructions which the court below then refused.

Appellant's first argument, that, because the term of the written distributor agreement, *i.e.*, one year, is expressly stated in writing, the *Razumic* principles are inapplicable here, was contained in a binding instruction requested by appellant: "If you find the Distributor Agreement explicitly permits termination at the end of one year by either party, without cause, then your verdict must be for [appellant] and against [appellee]. *Witmer v. Exxon Corp.*, 495 Pa. 540 [434 A.2d 1222] (1981)." (Appellant's Request for Binding Instructions and Points for Charge No. 18 at 4). The court below refused to give this instruction. *See* N.T., Points for

or other income or moneys in anticipation of the sales of said oils and other products or the business to be done, had this agreement not been terminated or cancelled.
(*Id.* ¶ 8 at 3).

Charge, December 19, 1983 at 2–5. Thus, we may reach the merits of this argument and determine whether the lower court erred as a matter of law in refusing this instruction. We find that it did not.

■ Appellant claims that it acted properly in accordance with its rights under the agreement, namely, that it could cancel "without cause" at the end of the one-year period. However, appellant's reliance on *Razumic, Burns v. Amoco Oil Co., supra,* and *Witmer v. Exxon Corp., supra* is misplaced. In *Razumic,* our Supreme Court found that

the absence of a ... term authorizing [the franchisor] to terminate the agreement without reason is striking.

The lone provision of the writing which could support [the franchisor's] termination of the comprehensive franchise agreement is that setting a three year term of occupancy. *This provision does not, however, confer upon [the franchisor] the right to terminate the franchise agreement at its pleasure.*

*Atlantic Richfield Co. v. Razumic, supra,* 480 Pa. at 377, 390 A.2d at 741 (footnote omitted) (emphasis added). We fail to see any difference between *Razumic* and the instant case. The fact that the instant agreement contains a one-year term does not by itself give appellant the right to terminate the franchise at will.

Nor do *Burns* and *Witmer* aid appellant's cause. In *Burns,* the franchisee's "lease contained a clear and unambiguous provision permitting termination by either party without cause on proper notice at the end of the original or renewal term." *Amoco Oil Co. v. Burns, supra,* 496 Pa. at 342, 437 A.2d at 384. The Court thus concluded "that this provision render[ed] the *Razumic* standard inapplicable...." *Id.* There is no such provision in the instant case. Similarly, in *Witmer,* the Court found that, even if it were a case of direct or indirect termination, "the leases expressly reserve[d] to each party the right not to renew the lease agreement at the end of the lease term." *Witmer v. Exxon Corp., supra,* 495 Pa. at 550, 434 A.2d at 1227. Here, paragraph three of the agreement, which simply states its

duration, is not a "without cause" termination provision. Therefore, we find that the lower court properly refused appellant's proposed eighteenth request for a binding instruction.

Concerning paragraph eight of the distributor agreement, appellant's proposed binding instruction read as follows: "If you find that [appellee] did *not have a franchise relationship* with [appellant], then you must find that paragraph 8 of the Distributor Agreement, which prohibits a claim for lost profits or income, prevents [appellee] from recovering damages in this case." (Appellant's Request for Binding Instructions and Points for Charge No. 19 at 5) (emphasis added). This instruction was *accepted* by the lower court. *See* N.T., Points for Charge, December 19, 1983 at 4. The court then instructed the jury as follows:

Now, in this case, and I'll give you the instructions on franchise in just a moment, but in this case, if you find that the relationship between [appellee] and [appellant] does not rise to the heighth [sic] of a franchise agreement relationship, as I will explain to you, then, the distributor agreement, then, does apply, and there is a provision in the distributor agreement. It is provision no. 8.

I will even tell you about it just in case you look at it and see it. That provision no. 8 would be effective if you find there is no franchise agreement provision. No. 8 says that [appellee], as the plaintiff, as the distributor, has no rights and has no claim at all against [appellant].

However, under the operation of the law, if you find that the relationship does create the franchise agreement, a franchise relationship between [appellee] and [appellant], then, that provision limiting their liability has no effect, and the provision in here permitting the cancellation or termination of the relationship at the end of one year has no effect.

(N.T., Jury Charge, December 19, 1983 at 5). Because the lower court gave appellant's proposed binding instruction on paragraph eight, we fail to see what appellant is assigning as error.

■ Appellant is arguing, for the first time on appeal, that, even if there was a franchise relationship between the parties and that franchise was terminated in bad faith, appellee could still *not* recover because of paragraph eight. In support of this proposition, appellant relies upon *Phillips Machinery Co. v. LeBlond, Inc.*, 494 F.Supp. 318 (N.D. Okla.1980).[9] It is axiomatic that issues raised for the first time on appeal will not be considered. Pa.R.A.P. 302(a); *cf. Commonwealth v. Kwatkoski*, 267 Pa.Superior Ct. 401, 411 n. 8, 406 A.2d 1102, 1107 n. 8 (1979) (alleged error waived where defendant failed to request a directed verdict at trial). Therefore, because appellant failed to request a binding instruction incorporating this argument, we find this issue waived.

For the foregoing reasons, we affirm the order of the court below and remand this case for a new trial. On retrial, the lower court should instruct the jury that, if it finds that the relationship between the parties was one of franchisor-franchisee, then it must determine whether the

9. Appellant also raised the possible preclusionary effect of paragraph eight in its preliminary objections in the nature of a demurrer and in its motion for summary judgment, but appellant did not cite this case in either its brief supporting its preliminary objections or that supporting its motion for summary judgment.

In *Phillips*, in finding that a contractual exclusion of consequential damages was not unconscionable, the District Court for the Northern District of Oklahoma held that "[e]ven if defendant terminated the contract in bad faith, plaintiff cannot recover lost profits as damages." *Phillips Machinery Co. v. LeBlond, Inc., supra* at 325. The plaintiff had argued that the defendant's good or bad faith in terminating the contract at issue should be a factor in determining whether the exclusionary clause was unconscionable. *Id.* at 324. The court thought that factor was irrelevant because "[s]ubsequent events will not make a valid provision unconscionable." *Id.*

We make no intimation here as to whether Pennsylvania courts would uphold such a clause in the franchisor/franchisee context. *See and compare K & C, Inc. v. Westinghouse Electric Corp.*, 437 Pa. 303, 263 A.2d 390 (1970) (clause enforceable); *National Cash Register Co. v. Modern Transfer Co., Inc.*, 224 Pa.Superior Ct. 138, 302 A.2d 486 (1973) (clause enforceable); *Stanley A. Klopp, Inc. v. John Deere Co., supra* (clause enforceable); *Johnson v. Mobil Oil Corp.*, 415 F.Supp. 264 (E.D.Mich.1976) (clause held unconscionable); *Stan D. Bowles Distributing Co. v. Pabst Brewing Co.*, 69 N.C.App. 341, 317 S.E.2d 684 (Ct.App.1984) (clause enforceable for listed items).

termination of such franchise was in bad faith *or* not commercially reasonable. The court should further instruct the jury that good faith is "honesty in fact in the conduct or transaction concerned."

Order granting a new trial affirmed and case remanded. Jurisdiction is relinquished.