555 A.2d 314

C. Earl Brown, Inc., Isaacs GMC, Inc., Iron City Truck Center, Tornetta GMC Truck & Equipment Co., and Triangle GMC Truck, Inc., Petitioners *v.* Commonwealth of Pennsylvania, State Board of Vehicle Manufacturers, Dealers and Salespersons, Respondent.

Argued September 13, 1988, before President Judge CRUMLISH, JR., Judge SMITH, and Senior Judge NARICK, sitting as a panel of three.

*David E. Lehman*, with him, *Stephen A. Moore, McNees, Wallace & Nurick,* for petitioners.

*April L. McClaine*, with her, *Joyce McKeever,* Chief Counsel, and *Velma A. Boozer,* Chief Counsel, for respondent.

*James A. Mollica, Jr., Meyer, Darragh, Buckler, Bebenek & Eck,* for Volvo White Truck Corporation, and intervenor, General Motors Corporation.

OPINION BY SENIOR JUDGE NARICK, March 16, 1989:

The two petitioners before this Court, Tornetta GMC Truck & Equipment Co. and Triangle GMC Truck, Inc. (Petitioners) were dealers whose heavy-duty truck franchises were terminated by General Motors Corporation (GMC). Petitioners each filed separate appeals with the State Board of Vehicle Manufacturers, Dealers and Salespersons (Board), which consolidated five separate appeals for hearing.[1] Petitioners contended that GMC had ille-

---

[1] One of the original petitioners, Isaacs GMC, Inc., discontinued its appeal in November 1988. The two other original petitioners, C. Earl Brown, Inc. and Iron City Truck Center, settled their disputes with the other original intervenor, Volvo White Truck Corporation (Volvo White). Because of this settlement with the only two dealers which had filed claims against it, Volvo White has filed a motion to dismiss for mootness. Petitioners contest this motion, for the sole reason that they seek reversal of the Board's order in its

gally terminated their franchises under Section 9(c) of the Board of Vehicles Act (Act), Act of December 22, 1983, P.L. 306, *as amended,* 63 P.S. §818.9(c). After several days of hearings, the Board concluded, in a twenty-three page adjudication and order filed December 17, 1987, that GMC had acted for good cause and in good faith in terminating Petitioners' franchises and denied their appeals. Petitioners have petitioned for our review of that order and GMC has intervened.[2]

The facts as found by the Board, which Petitioners do not challenge, may be briefly summarized as follows. Petitioners each held a "Dealer Sales and Service Agreement" with GMC. Each agreement contained three addenda, covering light-, medium- and heavy-duty trucks, and each was to continue until October 31, 1990. On November 7, 1986 and December 23, 1986, GMC sent notices to all its heavy-duty truck dealers, including Petitioners, that it intended to terminate all heavy-duty truck dealer relationships effective on or before December 31, 1987.

The Board found that GMC's decision to terminate Petitioners' heavy-duty truck franchises[3] was prompted by the following set of circumstances. GMC, which had been a leader in the heavy truck industry, was experiencing a decline in its market share, down to 8.7 percent in 1985. It had not made sufficient investments in new

---

entirety, so that GMC and Volvo White are treated consistently. In view of the fact that we will affirm the Board's order, and that Petitioners were GMC dealers with no claims against Volvo White, we see no reason not to grant Volvo White's motion. Accordingly, Volvo White is dismissed as a party.

[2] This case was assigned to the writer on February 3, 1989.

[3] GMC's decision only affected the portions of the parties' agreements relating to heavy-duty trucks. The Board found the heavy-duty truck industry to be distinct from those of light- and medium-duty trucks, given that heavy-duty trucks are generally manufactured to customer specifications.

product development to allow it to maintain its market position and was faced with three options in 1985: to exit the industry, to continue its existing business or to utilize its assets to establish something new. GMC opted for the third choice and began to investigate partnership options. It eventually concluded an agreement with Volvo[4] for the formation of a joint venture company, Volvo GM Heavy Truck Corporation (Volvo GM), of which GMC was to have a 24 percent share. Volvo's contribution to the joint venture company was the Volvo White Truck Corporation, a competitor of GMC having 220 dealers across the U.S. GMC itself had 350 U.S. dealerships for its heavy trucks. GMC and Volvo agreed to terminate their existing dealer relationships when they entered into the joint venture agreement. They then established 240 geographical areas of responsibility (AORs) for the new company and agreed to choose one dealer for each AOR, selecting one of their previous dealers where possible. Petitioners were two of the dealers not chosen by the joint venture company.

In their appeal to this Court, Petitioners raise the following issue: whether the Board erred as a matter of law by concluding that GMC had established good cause for and the good faith of its termination of Petitioners' heavy-duty truck franchises. As noted above, Petitioners do not challenge the Board's factual findings, nor do they raise any constitutional issues.[5]

---

[4] As defined in the parties' Memorandum of Understanding, "Volvo" encompasses the Swedish parent, AB Volvo, and its various subsidiaries.

[5] Our scope of review is limited to a determination of whether constitutional rights were violated, whether errors of law were committed or whether necessary findings of fact were not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Pritz Auto, Inc. v. State Board of Vehicle Manufacturers, Dealers and Salespersons*, 113 Pa. Commonwealth Ct. 890 536 A.2d 485 (1988).

Section 9(c) of the Act, which is the basis for Petitioners' claim, provides:

(c) **Canceling of franchises.**—It shall be a violation of this act for any manufacturer ... to unfairly, without due regard to the equities of said dealer and without just provocation, cancel the franchise of any vehicle dealer ... . ... Not less than 60 days advance notice of such termination ... shall be given the dealer ... prior to the effective date thereof unless the nature or character of the reason for termination ... is such that the giving of such notice would not be in the public interest. At any time before the effective date of such termination ... , the dealer ... may appeal to the board for a hearing on the merits, and following due notice to all parties concerned, such hearing shall be promptly held. No such termination ... shall become effective until final determination of the issue by the board. In the event of a dealer ... appeal, the burden of proof shall be on the manufacturer or importer to show that such termination ... was for good cause and in good faith.

Petitioners contend that the Board, in applying Section 9(c) to the facts of this case, "misperceived the core issue" (Petitioners' brief p. 14) because the Board found that GMC's decision to participate in the joint venture company was for good cause and in good faith. Petitioners assert that the focus of the Board's inquiry should have been whether the decision to terminate the franchises was for good cause and in good faith. Briefly stated, Petitioners argue that GMC advised them it was exiting the heavy truck industry, when, in reality, it was continuing, albeit in a different corporate form. Although Petitioners' argument might be read to imply the existence of bad faith in GMC's decision, nowhere in their

lengthy brief do they make a direct allegation to that effect.

Petitioners devote 18 pages of their brief to a discussion of the record evidence which, they contend, establishes by a preponderance of the evidence that GMC is continuing its heavy truck operations in a jointly-owned company which merges the two manufacturers' previously separate businesses. Apparently, their theory is that if it is conclusively demonstrated that GMC is not exiting the industry altogether, then it is necessarily obligated to continue Petitioners' franchises.

In our view, it is not seriously disputed that GMC will continue its participation in the heavy truck industry. As a result of the formation of Volvo GM, the form of that participation will necessarily change, which Petitioners acknowledge. The relevance of GMC's continued participation is the essence of the present dispute.

If Petitioners' argument is carried to its logical extreme, termination where a manufacturer has not ceased doing business altogether would be a violation of Section 9(c). However, the plain language of that section prohibits such a *per se* lack of good cause interpretation. Terminations are permitted under Section 9(c) if the manufacturer proves that its decision to terminate was for good cause and in good faith. Of necessity, the section contemplates a factual inquiry into the motives behind the termination.

Here, the Board clearly found that GMC was faced with a business decision and chose the option which would allow it to remain in the heavy truck industry in a reduced capacity in order to best utilize its available assets. The consequence of merging two large dealer networks resulted in the termination of many dealer franchises. The Board found that GMC's initial decision was made in good faith and for good cause. The termina-

tions which flowed from that initial good faith decision were part of a comprehensive and carefully studied scheme to ensure adequate representation throughout the country while also ensuring adequate dealer profits. The Board concluded that GMC met its burden of proving good cause and good faith.

Petitioners argue that we must examine GMC's decision to continue its activities via the joint venture company in conjunction with the purposes of the Act, stating that "[t]he protections afforded motor vehicle dealers in Pennsylvania under §9(c) of the Act are worthless if manufacturers may transfer assets to a controlled entity and set up operations with a 'new' dealer body." (Petitioners' brief p. 42) This statement clearly indicates the difficulty, if not the impossibility, of separating GMC's decision to set up the joint venture company from its resulting decision to terminate these Petitioners' franchises. Petitioners assert that a manufacturer may avoid application of Section 9(c) by "simply" establishing another corporate entity to continue its operations. The Board obviously did not subscribe to this theory because it investigated GMC's motives in establishing the new company.

The fallacy of Petitioners' argument is that, on the one hand, they strenuously argue that the Board should have focused simply on the termination of their franchises, while admitting on the other hand that any bad faith in this factual scenario could be uncovered by an examination of what motivated the manufacturer's decision to transfer its assets to a controlled entity in the first instance. This veiled reference to a *potential* bad faith motive is the only concrete example Petitioners provide of the existence of such a motive on behalf of GMC. Indeed, elsewhere in their argument, they frankly admit that they have not challenged GMC's business decision

to form the joint venture company (*See* Petitioners' brief pp. 19-20). What remains when we excise this circular reasoning is Petitioners' argument that termination without exiting the industry is *per se* bad faith, the argument we have disposed of above.

Clearly, the Board has addressed Petitioners' precise concern by examining GMC's motives. Specifically, the Board found that GMC's decision to form the joint venture company was for good cause because it was rapidly losing its market share and could not afford to make the large capital investments that would be required to rebuild its position. It opted for participation in a joint venture because such a decision would allow it to generate a return on the substantial assets it could contribute. The Board defined "good faith" as "honesty in fact in the conduct or transaction concerned," citing *Loos & Dilworth v. Quaker State Oil Refining Corp.*, 347 Pa. Superior Ct. 477, 487, 500 A.2d 1155, 1160-61 (1985). It specifically found that there had been no showing of dishonesty by either of the manufacturers involved.

Neither the factual support for the Board's findings nor the legal reasoning in reaching these conclusions has been challenged by Petitioners. Because we find substantial evidence to support the Board's findings, we will affirm its order.[6]

---

[6] The final portion of Petitioners' argument is an attempt to use, by analogy, the theory of successor corporate liability, a theory developed through an easily distinguishable line of products liability cases, to establish predecessor liability in this case. Having determined that the Board did not err in its conclusion that GMC had terminated Petitioners' franchises for good cause and in good faith in accordance with the statutory mandate, we see no need to discuss this novel theory.

## ORDER

AND NOW, this 16th day of March, 1989, the motion to dismiss filed by Volvo White Truck Corporation is hereby granted. It is further ordered that the order of the State Board of Vehicle Manufacturers, Dealers and Salespersons, dated December 17, 1987, is hereby affirmed.

Judge MACPHAIL did not participate in the decision in this case.