**GENERAL GMC, INC.,**
**Plaintiff, Appellant,**

v.

**VOLVO WHITE TRUCK CORP., et al.,**
**Defendants, Appellees.**

**No. 90–1414.**

United States Court of Appeals,
First Circuit.

Heard Sept. 14, 1990.
Decided Nov. 9, 1990.

Mary P. Harrington, with whom George W. Atkins, III, Debra R. Silberstein and Ronan, Segal & Harrington, were on brief, for plaintiff, appellant.

Mark E. Tully, with whom Anthony M. Feeherry and Goodwin, Procter & Hoar, were on brief, for defendants, appellees.

Before TORRUELLA, Circuit Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

TORRUELLA, Circuit Judge.

Plaintiff-appellant General GMC, Inc., ("General GMC") sued defendants-appellees Volvo White Truck Corp. ("Volvo White") and Volvo GM Heavy Truck Corp. ("Joint Venture") in the United States District Court for the District of Massachusetts. Appellees sought and were granted summary judgment on three counts: (1) violation of the Automobile Dealers' Day in Court Act, 15 U.S.C. §§ 1221–1225 ("ADDCA"), (2) violation of Mass.Gen.L. ch. 93B, and (3) breach of contract. General GMC appeals that order. For the reasons stated below, we affirm in part and reverse in part.

## FACTS

Appellant General GMC is a truck dealership located in Methuen, Massachusetts. General GMC was offered a Volvo franchise in 1975 and operated under a written franchise agreement with appellee Volvo White until December 31, 1984, when the agreement expired by its own terms. Volvo White extended the agreement, in writing, through September 30, 1985. After that time, General GMC and Volvo White conducted business without a written agreement.

The principal owner of the dealership was Mr. Edward Perrault, until his death in 1984. Upon Mr. Perrault's death, his widow, Mrs. Christine Perrault, became sole shareholder. Mrs. Perrault notified Volvo White of her intent to sell the business to Mr. Timothy Rock, who had been an employee since 1959 and general manager since 1976. Volvo White, however, refused to consent to the sale because Mr. Rock was seeking financing from Motors Holding Corp., a division of General Motors and a competitor of Volvo. Nevertheless, Mr. Rock purchased the dealership on March 13, 1987, and continued to do business with Volvo White until December 31, 1987. Mr. Rock did not finance his purchase through Motors Holding Corp.; however, Volvo White never consented to the sale.

In 1986, Volvo White decided that it could not survive in the heavy truck market alone and began negotiating with General Motors to form a joint venture. The Joint Venture, known as Volvo GM Heavy Truck Corp., was officially formed on December 31, 1986, and began doing business on January 1, 1988. Volvo White ceased operating as a separate entity at that time.

The Joint Venture decided as a matter of economics that it could support only 240 dealerships across the United States. This required a reduction, by approximately half, of the dealerships currently in operation. Two dealerships in the Methuen, Massachusetts area operated as Volvo franchises: General GMC and The Bracken Co. ("Bracken"). The Joint Venture deter-

mined that its objective could best be achieved if that number was reduced to only one. The Joint Venture chose Bracken over General GMC and General GMC's franchise was terminated as of December 31, 1987. It is that choice which is the subject of this dispute.

## STANDARD OF REVIEW

Summary judgment should only be issued if there is no dispute of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court must review the record, together with all reasonable inferences therefrom, in the light most favorable to the non-moving party. *Johnson v. Educational Testing Service*, 754 F.2d 20, 25 (1st Cir.), *cert. denied*, 472 U.S. 1029, 105 S.Ct. 3504, 87 L.Ed.2d 635 (1985).

## DISCUSSION

General GMC claims that neither the Joint Venture nor Volvo White acting for the Joint Venture made a fair evaluation before choosing Bracken as the sole Joint Venture dealership for the Methuen area and therefore appellees acted in bad faith in violation of federal statute (the ADDCA), in violation of state statute (Chapter 93B) and in breach of contract. In moving for summary judgment, Volvo White presented evidence to prove that the decision to terminate General GMC's franchise was made for valid business reasons. The district court accepted appellees' contentions and found, as a matter of law, that General GMC had no claim. This court finds, with respect to the state law and breach of contract claims, that the district court was in error and that there exist unresolved issues of material fact. The ruling regarding the federal law claim is affirmed as a matter of law.

### 1. *The ADDCA*

■ The district court correctly found that in order to prove a violation of the ADDCA, General GMC needed to show some evidence of coercion or intimidation.

Section 1222 of the ADDCA allows an automobile dealer to bring suit

> against an[ ] automobile manufacturer ... [to recover damages sustained] by reason of the failure of said ... manufacturer ... to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, cancelling, or not renewing the franchise with said dealer; *Provided*, That in any such suit the manufacturer shall not be barred from asserting in defense of any such action the failure of the dealer to act in good faith.

15 U.S.C. § 1222. The statute defines "good faith" as

> the duty ... to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: *Provided*, That recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute lack of good faith.

*Id.* at § 1221(e). This court has read the requirements of the ADDCA very narrowly to require "actual or threatened coercion or intimidation." *H.D. Corp. of Puerto Rico v. Ford Motor Co.*, 791 F.2d 987, 990 (1st Cir.1986). Since General GMC has produced no evidence showing that it was subjected to coercion or intimidation by either Volvo White or the Joint Venture, appellees were properly granted summary judgment on this issue.

### 2. *Chapter 93B*

■ Chapter 93B of the Massachusetts General Laws is the state law counterpart of the ADDCA. Section 4(1) states that

> [i]t shall be deemed a violation of [this chapter] for any manufacturer ... to engage in any action which is arbitrary, in bad faith, or unconscionable and which causes damage to any of said parties or to the public.

Mass.Gen.L. ch. 93B, § 4(1). Furthermore, § 4(3)(e) states that

> [i]t shall be deemed a violation of [this chapter] ... notwithstanding any term or provision of a franchise or selling agree-

ment, to cancel or terminate the franchise or selling agreement of a motor vehicle dealer without good cause and without giving notice as hereinafter provided ...

*Id.* at § 4(3)(e). Notice must be provided within 60 days prior to termination and such notice must contain a detailed statement of the reasons for termination. *Id.* at § 4(3)(e)(1). This applies to both written and oral agreements. *Id.* at § 8. The adequacy of notice is not disputed in this appeal.

▅▅▅ Unlike the ADDCA, however, Chapter 93B does not define "bad faith" or "good cause." Thus a court, in determining "bad faith" under Chapter 93B, is not bound by the same restrictions as under the ADDCA. Bad faith may encompass broader conduct under Chapter 93B than mere coercion or intimidation. *Tober Motors, Inc. v. Reiter Oldsmobile, Inc.,* 376 Mass. 313, 319–20, 381 N.E.2d 908 (1978).

Appellees contended, and the district court accepted, that they acted for good cause, and not in bad faith, because they conducted an evaluation of all of their dealerships and chose Bracken over General GMC for valid business reasons. Appellant argues, and the record shows, however, that appellees' contention may not be supported by the evidence. There is sufficient evidence in the record, contained in the depositions of Wendover P. Holzworth and Robert Pierce McComas, to raise a question of fact as to whether General GMC was actually considered for a Joint Venture dealership, and if not, whether failure to do so constituted bad faith or lack of good cause under the statute. Mr. Holzworth was instrumental in choosing which dealerships would operate for the Joint Venture. Mr. McComas supplied sales performance information for Volvo White to the Joint Venture evaluators. When questioned, Mr. Holzworth stated that he did not know who, if anyone, reviewed General GMC's financial statements and in fact could not recall having received a financial statement for General GMC. Mr. McComas testified that he had not provided any sales information regarding General GMC and was told

by Mr. Holzworth in 1987 that General GMC was not being considered as a potential Joint Venture dealership because of General GMC's non-contractual relationship. These depositions raises a question of material fact which makes summary judgment inappropriate.

### 3. *Breach of Contract*

▅▅▅ The district court dismissed appellant's breach of contract claim for two reasons: (a) no contract existed between the parties and (b) Volvo White had ceased to exist. The district court erred in dismissing this claim based on the alleged nonexistence of a contract without first exploring the possibility of an implied contract under applicable law. There is sufficient evidence on the record to show that an implied contract may have been developed through the parties' course of dealing. Courts have found that franchise agreements are protected by some of the general provisions afforded by the Uniform Commercial Code. *See Zaptha v. Dairy Mart, Inc.,* 381 Mass. 284, 408 N.E.2d 1370 (1980) (applying the U.C.C. requirement of good faith between merchants to a franchise agreement). Moreover, the fact that Volvo White no longer exists as a separate entity does not necessarily imply that the corporation no longer exists for purposes of responsibility for damages or otherwise. *See* Revised Model Business Corporation Act §§ 14.05–14.07 (1984).

### CONCLUSION

For the reasons stated above, we affirm summary judgment with respect to the federal statutory claim and reverse with respect to the state statutory and breach of contract claims. Because there no longer exists a question of federal law pending before the district court, on remand the court may wish to reconsider whether it should continue to exercise jurisdiction over the pendent state claims. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

*Affirmed in part, reversed and remanded in part.*