**SCHOTT MOTORCYCLE SUPPLY, INC., Plaintiff, Appellant,**

v.

**AMERICAN HONDA MOTOR COMPANY, INC., Defendant, Appellee.**

No. 91–2170.

United States Court of Appeals, First Circuit.

Heard April 6, 1992.
Decided Sept. 28, 1992.

---

Paul F. Macri with whom Anne B. Jud and Berman & Simmons, P.A., Lewiston, Me., were on brief, for plaintiff, appellant.

Robert W. Dickerson with whom Roy L. Anderson, Lyon & Lyon, Los Angeles, Cal., Wayne R. Douglas and Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., were on brief, for defendant, appellee.

Before CYR, Circuit Judge, COFFIN and CAMPBELL, Senior Circuit Judges.

LEVIN H. CAMPBELL, Senior Circuit Judge.

Appellant, Schott Motorcycle Supply, Inc. ("Schott Motorcycle"), a failed Honda motorcycle dealership, sued American Honda Motor Co., Inc. ("Honda") in the district

court. Schott Motorcycle complained that Honda had reduced its commitment to the motorcycle market after its representatives had promised otherwise. Honda's conduct was alleged to constitute a breach of contract, a violation of Maine statutory law, Me.Rev.Stat. Ann. tit. 10, § 1174, and fraud. The district court granted summary judgment in favor of Honda on the contract and statutory claims and dismissed the fraud claim. We affirm.

## I. BACKGROUND

In February 1985, Schott Motorcycle Supply entered into a "Sales and Service Agreement" with Honda. At that time, Schott Motorcycle Supply was a sole proprietorship owned by Emil Schott. Emil's son, John Schott, was designated in the Agreement as "dealer manager." The Agreement, which established Schott Motorcycle Supply as a Honda franchise dealer, expressly stated that it could be modified only in writing. The Agreement also stated that it was personal to the dealer, dealer owner and the dealer manager and that it could not be transferred or assigned without the prior written consent of Honda.

In 1986, the Schott family was considering a division of the business, which then sold Honda and Harley Davidson motorcycles as well as golf carts. John Schott would take over the existing business, selling only Honda motorcycles. The Harley Davidson and golf cart sales would be split off into a separate business to be run by John Schott's brother.

Before accepting this arrangement, John Schott allegedly spoke to Honda representatives Mark Pearlstein and Mike Kehne. At that March 11, 1986 meeting, Schott disclosed financial records indicating that Schott Motorcycle Supply's retail sales approximated $5 million and that Honda sales accounted for about fifty percent of this total. According to Schott, Pearlstein and Kehne assured him that Honda would remain just as committed to the motorcycle industry as it had been in the past and that new Honda products and programs would cause an increase in Honda sales, enough to make up for the loss of sales from

Harley Davidsons and golf carts. Schott told them that he was considering taking on another line of motorcycles, but was advised that, if he did so, Honda would consider establishing another Honda dealer in a nearby area.

Allegedly relying upon the assurances made by Pearlstein and Kehne, John Schott, incorporated as Schott Motorcycle Supply, Inc., proceeded to take over the Honda dealership on January 1, 1987. By August 1990, however, Schott Motorcycle Supply, Inc. had failed and gone out of business.

According to John Schott, his business's failure was a direct result of a reduced commitment on the part of Honda in the motorcycle industry. The factual allegations as to how Honda failed to remain committed to the motorcycle market are somewhat sketchy. In its answers to defendant's interrogatories, Schott claimed that Honda failed to develop products and programs that would have allowed for growth and maintenance in sales as promised. These products included numerous models of motorcycles that, if attractively priced, would supposedly have increased Honda sales. With respect to assistance and service programs, Schott Motorcycle contended that Honda should have provided better wholesale flooring assistance, additional advertising cooperative programs and funds, more assistance at warehouse auctions, continuation of the Exclusive Dealer Program, stronger retail sales and rebate programs, and more flexible first time buyer programs and promotions. The "bottom line," according to Schott Motorcycle, is that "Honda had the resources to develop models, products and programs to at least maintain their 55%–60% of the United States market share" and yet failed to do so.

## II. DISCUSSION

### A. *Breach of Contract*

Key to granting summary judgment for Honda on Schott Motorcycle's breach of contract claim was the district court's conclusion that Schott Motorcycle had admitted in its complaint that it was a party to

the February 1985 Agreement between the proprietorship and Honda and was, therefore, bound by its terms. Plaintiff's complaint alleged the following with respect to the Agreement:

5. Effective February 1, 1985, Plaintiff and Defendant entered into a "Sales and Service Agreement". A copy of the Agreement marked Exhibit 1, is attached and made a part of this pleading.

6. The mentioned Agreement was a franchise dealership contract, and established Plaintiff as a franchise dealer for American Honda Motorcycle.

7. Plaintiff has at all times during the effective dates of the franchise dealer contracts complied with the terms and provisions of the franchise dealer contracts.

These allegations were reasserted in each count of the complaint and remained consistent through two amended complaints.

The district court held that, by virtue of this pleading, plaintiff admitted that it was bound by the terms of the 1985 Agreement. The court rejected plaintiff's argument, raised for the first time during summary judgment proceedings, and now pressed before us, that the 1985 franchise Agreement was, in effect, revoked when on January 1, 1987 the principals of the dealership were changed and Schott Motorcycle changed from a proprietorship to a corporation. The Agreement provided that it could not be modified except by written instrument signed by an authorized Honda officer. Where no such written instrument was alleged, and where nothing indicated that Honda and Schott Motorcycle, however constituted, had ever discontinued the Agreement, the court saw no merit in plaintiff's claim that the oral representations regarding Honda's commitment to the motorcycle market had written a binding new term into the dealership arrangement. As there was no violation of the terms of the 1985 Agreement itself, the court found no viable claim for breach of contract.

Plaintiff does not challenge the district court's determination that there was no breach of the 1985 Agreement. Rather, Schott Motorcycle contends that the district court erred in holding that plaintiff judicially admitted that "the *only* operative contract between the parties was the written franchise agreement." Plaintiff contends that the pluralization of the word "contracts" at various points in the complaint as well as the complaint's references to oral representations should have put the defendant and the district court on notice that it was pleading a termination and novation. We disagree.

The judicial admission found by the lower court rested on plaintiff's clear and express statement in its original and amended complaints that "a contract did, in fact, exist between the parties," fortified by an attached copy of the 1985 Agreement. No other agreement was mentioned nor was it suggested the Agreement was nullified or altered, or when or how that occurred.

■ "A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Bellefonte Re Insurance Co. v. Argonaut Insurance Co.*, 757 F.2d 523, 528 (2d Cir.1985); *see, e.g., Davis v. A.G. Edwards & Sons*, 823 F.2d 105, 108 (5th Cir.1987); *Ferguson v. Neighborhood Housing Services.*, 780 F.2d 549, 550–51 (6th Cir.1986). Here, plaintiff clearly and unambiguously alleged in its original complaint and amended complaints that it was a party to the 1985 Agreement. Absent circumstances warranting relief from this judicial admission, the court felt that plaintiff should not be allowed to contradict its express factual assertion in an attempt to avoid summary judgment. *Missouri Housing Development Commission v. Brice*, 919 F.2d 1306, 1315 (8th Cir.1990) ("admissions in the pleadings are binding on the parties and may support summary judgment against the party making such admissions").

■ To be sure, a pleading should not be construed as a judicial admission against an alternative or hypothetical pleading in the same case. *McCalden v. California Library Association*, 955 F.2d 1214, 1219 (9th Cir.1990); *Garman v. Griffin*, 666 F.2d 1156, 1159 (8th Cir.1981); *see* Fed. R.Civ.P. 8(e)(2) (allowing alternative and

hypothetical pleading). Plaintiff's assertion, however, that it was a party to the 1985 Agreement was not made in the context of an alternative or hypothetical pleading. *See* 5 Wright & Miller, *Federal Practice and Procedure* § 1282 at 525 (2d ed. 1990) (generally an alternative claim is drafted in the form of "either-or" and a hypothetical claim is in the form of "if-then"). Rather, plaintiff expressly incorporated the factual allegation that it was a party to the 1985 Agreement in its count alleging breach of contract. *See Local 900, United Paperworkers International Union v. Boise Cascade Corp.*, 683 F.Supp. 280, 283–84 (D.Me.1988) (applying judicial admission to factual assertion that was restated in every count). Moreover, plaintiff marked the 1985 Agreement as "Exhibit 1" and attached it to the original complaint. Thus, the cases noting that judicial admissions should not be applied to undermine the privilege of alleging inconsistent facts in alternative pleadings provide no aid to plaintiff.

 Nor do we think that the district court's application of the doctrine of judicial admissions here violated the admonition in Rule 8(f) that pleadings must be construed to do substantial justice. Although the liberal pleading policy embodied in Rule 8 does not require a party to specify its legal theory of recovery, the pleadings must at least implicate the relevant legal issues. *See* 5 Wright & Miller, *Federal Practice and Procedure*, § 1286, at 558 (2d ed. 1990) ("the liberal construction accorded a pleading under Rule 8(f) does not require the courts to fabricate a claim that a plaintiff has not spelled out in his pleadings"); *cf. Connecticut General Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 622 (1st Cir.1988) (complaint that alleges basic

facts underlying claim need not explicitly identify proper legal theory).

We have scoured the complaint and can find no indication that plaintiff was pleading a termination and novation of the Agreement. The mere pluralization of the word "contracts" at various points in the complaint was not enough to place the defendant and the district court on notice of such a contention. The complaint contains no mention of any contract other than the 1985 Agreement, which was marked as "Exhibit 1" and attached to the pleading. The complaint's references to oral representations quite reasonably were understood as supporting plaintiff's claim of fraud, and not the formation of a separate contract.[1] Under these circumstances, we cannot say that the district court abused its discretion in applying the doctrine of judicial admissions to foreclose a contract claim based on the purported oral promises. *See United States v. Belculfine*, 527 F.2d 941, 944 (1st Cir.1975) (trial judge retains discretion to relieve a party from the effect of a judicial admission in appropriate cases).

### B. *Me.Rev.Stat.Ann. tit. 10, § 1174*

In Count II of its complaint, plaintiff alleged that defendant had violated § 1174 of the Maine Revised Statutes in the following respects:

a. Defendant's action was arbitrary, in bad faith and unconscionable;

b. Defendant coerced or attempted to coerce plaintiff into entering the franchise agreement, and to give up other lines of motorcycles by its wrongful acts;

c. Defendant required plaintiff to refrain from participation in the management of, investment in, or the acquisi-

---

**1.** Moreover, we can find little prejudice from the district court's application of the doctrine of judicial admissions here. Even assuming that plaintiff had sufficiently pled an oral contract, the alleged representations seem scarcely sufficient to form the basis for a valid oral contract. At best, they seem to be expressions of opinion or predictions as to future events, not promises that could form an offer. *See Smith v. Central Soya of Athens, Inc.*, 604 F.Supp. 518, 527

(E.D.N.C.1985) ("The comments 'we're in the chicken business to stay' and 'the chicken houses will last for twenty years,' even if uttered by defendants and relied on by plaintiffs, create absolutely no contractual obligation on the part of either party."); *see also Maine Surgical Supply Co. v. Intermedics Orthopedics, Inc.*, 756 F.Supp. 597, 603 (D.Me.1991) (parties must manifest intention to be bound in order to create oral contract).

tion of another line of new motorcycles or related products.

Section 1174 declares unlawful *"any action* which is arbitrary, in bad faith or unconscionable...."* Me.Rev.Stat.Ann. tit. 10, § 1174.1. Plaintiff alleged that Honda violated this statute by breaking its oral commitments and by coercing plaintiff into not selling the products of other manufacturers.

With respect to plaintiff's first claim of statutory violation—that defendant's conduct was arbitrary, in bad faith and unconscionable—the district court's holding was based in large part on the failure of plaintiff's breach of contract claim. The district court concluded that the Agreement set forth the entire relationship between the parties, and that none of its terms were arbitrary, in bad faith or unconscionable.

■ We do not find the court's reasoning, by itself, to be entirely persuasive. The fact that the Agreement's provisions were lawful did not mean that oral representations and threats might not violate the statute. *See Zapatha v. Dairy Mart, Inc.,* 381 Mass. 284, 408 N.E.2d 1370, 1378 (Mass.1980) (oral representations are relevant to issue of good or bad faith under the Uniform Commercial Code even if the representations·cannot be used to vary terms of written agreement); *see also Jay Edwards, Inc. v. New England Toyota Distributor, Inc.,* 708 F.2d 814, 817–19 (1st Cir.), *cert. denied,* 464 U.S. 894, 104 S.Ct. 241, 78 L.Ed.2d 231 (1983) (distributor's alleged harassment of dealer, including wrongful accusations and lies, presented jury issue as to whether distributor had engaged in conduct which is arbitrary, in bad faith or unconscionable).

But while the district court's analysis is not by itself dispositive, we affirm on other grounds. Plaintiff produced little or nothing to support its contention that defendant's conduct was arbitrary, in bad faith or unconscionable. Absent some showing to this effect, summary judgment was appropriate.

■ The statute does not define the terms "arbitrary, in bad faith or unconscionable," and there is no Maine case law

interpreting § 1174.1. Nevertheless, both the terms "arbitrary" and "unconscionable" have generally accepted meanings: "arbitrary" has been defined as "selected at random and without reason," and "unconscionable" as "shockingly unfair or unjust." Webster's New Collegiate Dictionary. And, although the Maine statute does not define "bad faith," it does provide a definition of "good faith": "honesty in fact and the observation of reasonable commercial standards of fair dealing in the trade" as defined and interpreted in § 2–103(1)(b) of the U.C.C. A party presumably acts in bad faith when one of these two elements is missing.

■ Applying these definitions to plaintiff's claim under § 1174.1, we see no genuine issue of material fact as to whether defendant's conduct was arbitrary, in bad faith or unconscionable. Plaintiff presented no facts suggesting that defendant's conduct was "without reason" or "shockingly unfair." Nor did plaintiff make any showing that defendant's actions were dishonest or commercially unreasonable within the meaning of § 2–103(1)(b). *See Johnson & Johnson Products, Inc. v. Dal International Trading Co.,* 798 F.2d 100, 106 n. 4 (3d Cir.1986) (absent evidence of customary, reasonable trade practice, a plaintiff cannot rely on latter portion of definition of good faith in § 2–103(1)(b)).

Taking plaintiff's version of events at face value, Pearlstein and Kehne made predictions about the future profitability of plaintiff's franchise in light of the products and programs that Honda would supposedly offer. Honda, thereafter, did not remain as committed to the motorcycle business as Pearlstein and Kehne had predicted it would. Plaintiff presented nothing to show, however, that Honda's subsequent "withdrawal" from the motorcycle market was for any reason other than legitimate business considerations arising at a later time, or that Pearlstein's and Kehne's predictions were intentionally false when made. *See Diversified Foods, Inc. v. First National Bank of Boston,* 605 A.2d 609, 614 (Me.1992) (summary judgment appro-

priate on bad faith claim under § 1–203 of U.C.C. if there are no facts "which directly, or through inference indicate that [a defendant] acted dishonestly, with ulterior motives, or for anything other than business reasons in exercising their rights under [an] agreement."); *Empire Gas Corp. v. American Bakeries Co.*, 840 F.2d 1333, 1339 (7th Cir.1988) (a party does not act in bad faith if there is a valid business reason for its action); *C. Earl Brown, Inc. v. Commonwealth, State Board of Vehicle Manufacturers, Dealers & Salespersons*, 124 Pa.Cmwlth. 205, 555 A.2d 314, 317 (1989) (upholding agency decision that manufacturer acts in good faith when it partially withdraws from heavy truck industry for legitimate business reasons); *cf. General GMC, Inc. v. Volvo White Truck Corp.*, 918 F.2d 306, 309 (1st Cir.1990) (summary judgment is inappropriate on claim of bad faith termination if evidence suggests that distributor did not even consider or evaluate terminated dealership); *Reid v. Key Bank of Southern Maine, Inc.*, 821 F.2d 9, 15 (1st Cir.1987) (jury could properly find bad faith if party is motivated by ulterior considerations rather than good faith concern for its financial health). Under these circumstances, plaintiff's mere conclusory assertions that defendant's predictions were arbitrary, in bad faith and unconscionable within the meaning of § 1174.1 presents no genuine issue of material fact, and summary judgment was appropriate.[2]

▮ Plaintiff further alleges that Honda "coerced or attempted to coerce plaintiff into entering the franchise agreement, and to give up other lines of motorcycles,"[3] in purported violation of § 1174.3.B. Also,

that Honda "required plaintiff to refrain from participation in the management of, investment in, or acquisition of another line of new motorcycles or related products," in violation of § 1174.3.M. Neither claim has merit. The acts of alleged coercion occurred in 1986, after plaintiff had entered into the 1985 Agreement with Honda. The district court correctly ruled that there was no genuine issue of material fact as to whether, *in 1986*, Honda had coerced plaintiff into entering into the 1985 Agreement. With regard to the alleged violation of § 1174.3.M, plaintiff failed to point to any evidence indicating that Honda had *"required"* plaintiff to refrain from carrying another line of motorcycles. At most, plaintiff's evidence showed that Honda representatives told plaintiff that Honda would consider setting up a rival dealership if plaintiff added new motorcycle brands. These communications fall short of making a claim under § 1174.3.M that Honda "required" plaintiff to refrain from the acts in question.

### C. *Fraud*

Plaintiff's complaint included a claim for fraud based on the oral representations of Honda representatives concerning Honda's commitment to the motorcycle market and the future profitability of plaintiff's franchise. In an order dated March 26, 1991, the district court granted a motion by plaintiff to amend its complaint, but then dismissed the claim of fraud in the amended complaint because it failed to meet the particularity requirements of Fed.R.Civ.P. 9(b). Plaintiff thereafter filed a second motion to amend and a second amended complaint, which specified the time, place,

---

2. Plaintiff's allegation that Honda acted arbitrarily, in bad faith or unconscionably in informing plaintiff that Honda would consider establishing a new dealer in plaintiff's market area if plaintiff added a competing franchise does not state a claim under § 1174.1, as the subject of adding a competing franchise is expressly addressed in § 1174.3.M, which states that a distributor shall not *"require"* a dealer to refrain from adding another line. *See Scuncio Motors, Inc. v. Subaru of New England, Inc.*, 555 F.Supp. 1121, 1133 (D.R.I.1982), *aff'd on other grounds*, 715 F.2d 10 (1st Cir.1983) (if manufacturer complies with specific termination provision of Rhode Island Dealers' Law, "it cannot

then be held liable, based on the same actions, under ... [s]ection of the same law prohibiting conduct which is arbitrary, unconscionable and in bad faith"). Plaintiff's separate claim under § 1174.3.M is discussed below.

3. The district court held that the second clause of this allegation "does not fall within the language of section 1174.3.B under Maine law." Since plaintiff does not challenge this portion of the district court's order, this issue has been waived. *Piazza v. Aponte-Roque*, 909 F.2d 35, 37 (1st Cir.1990) (issue on appeal is waived if appellant fails to raise issue in opening brief).

and content of the alleged false representations. On August 1, 1991, the district court denied plaintiff's second motion to amend, finding the second amended complaint "to be deficient in alleging freud in the count charging freud (sic)." Plaintiff claims that the district court erred in dismissing the fraud claim and denying plaintiff's second motion to amend the complaint.

We need not, however, decide whether plaintiff's amended complaint meets the particularity requirements of Rule 9(b) because plaintiff's claim of fraud is fatally defective in another respect. The alleged misrepresentations consisted only of opinions as to future events. There were no circumstances indicating that plaintiff could justifiably rely on these opinions as "facts." Under Maine law, "the breach of a promise to do something in the future will not support an action of deceit, even though there may have been a preconceived intention not to perform." *Boivin v. Jones & Vining, Inc.*, 578 A.2d 187, 188 (Me.1990) (quoting *Shine v. Dodge*, 130 Me. 440, 443, 157 A. 318 (1931)). It is true that "[t]he relationship of the parties or the opportunity afforded for investigation and the reliance, which one is thereby justified in placing on the statement of the other, may transform into an averment of fact that which under ordinary circumstances would be merely an expression of opinion." *Id.* 578 A.2d at 188–89 (employee can rely on promise of continued employment); *Wildes v. Pens Unlimited Co.*, 389 A.2d 837, 840 (Me.1978) (same).

But the alleged fraudulent representations made by Pearlstein and Kehne consisted merely of statements that Honda "would continue to be just as committed to the motorcycle market as it had been in the past in terms of support for dealerships and advertising," and that, despite the loss of the Harley Davidson and golf cart businesses, "the products that Honda was coming forward with, including motorcycles, scooters and other products would definitely cause an increase in sales over previous years." These general statements in the context of franchisor-franchisee communications constitute nothing more than "puffing" or "trade talk," upon which no reason-able person would rely. *See, e.g., Vaughn v. General Foods Corp.*, 797 F.2d 1403, 1411 (7th Cir.1986), *cert. denied*, 479 U.S. 1087, 107 S.Ct. 1293, 94 L.Ed.2d 149 (1987) ("[i]n a sales or marketing context, and franchisor-franchisee negotiations certainly are to be placed in that context, such expressions of opinion are known as 'puffing,' 'trade talk,' or 'sales talk' and do not constitute actionable fraud"); *Kelly Tire Serv. Inc. v. Kelly–Springfield Tire Co.*, 338 F.2d 248, 253 (8th Cir.1964) ("[a]t best, these projections [about plaintiff's business], however persuasive in shaping plaintiff's plans, were opinions subject to the uncontrollable economic influences of free enterprise and not fraudulent misrepresentations of past or existing facts on which plaintiff justifiably relied to its detriment"). Under these circumstances, plaintiff could not have justifiably understood the alleged misrepresentations to be assurances as to specific facts, rather than mere opinion.

The district court, therefore, properly dismissed plaintiff's fraud claim and denied plaintiff's second motion to amend the complaint. *See Jackson v. Salon*, 614 F.2d 15, 17 (1st Cir.1980) (a district court may deny leave to amend if the proposed amendment would be futile).

*The district court's grant of summary judgment to Honda is affirmed. Costs to appellee.*